JOHN L. ROBINSON, on Behalf of the Estate of Kristi Robinson, Plaintiff-Appellant, v. LaCASA GRANDE CONDOMINIUM ASSOCIATION *et al.*, Defendants (Sidney Feller *et al.*, Defendants-Appellees).

Fourth District    No. 4—89—0949

Opinion filed October 31, 1990.

Immel, Zelle, Ogren, McClain & Costello, of Springfield (Kevin T. McClain and Michael J. Costello, of counsel), for appellant.

Randall A. Mead, P.C., of Springfield, for appellees Sidney Feller, Steven Orr, Rex R. Livingston, Gene Ferguson, Janice Wolgamot, and Angela Williams.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

John Robinson, administrator of Kristi Robinson's estate, appeals

from an order of the Sangamon County circuit court dismissing count III of his complaint, which was against the individual managers of the board of managers of LaCasa Grande Condominium Association. This case raises issues of first impression involving the Condominium Property Act (Condominium Act) (Ill. Rev. Stat. 1985, ch. 30, pars. 301 through 331) and the General Not For Profit Corporation Act of 1986 (Not For Profit Corporation Act) (Ill. Rev. Stat., 1987 Supp., ch. 32, par. 108.70 (eff. Jan. 1, 1987)). We conclude count III did not state a cause of action and affirm.

On March 27, 1987, Kristi Robinson, then 10 years old, drowned in a swimming pool at LaCasa Grande Condominiums in Springfield, Illinois. She and her family lived at LaCasa Grande, where her parents owned a condominium unit.

The plaintiff filed a wrongful death action on May 26, 1989. Count I was against Springfield Marine Bank as trustee of land trust No. 53—0135—0. Count II was against the LaCasa Grande Condominium Association. Count III was against the defendants-appellees herein, Sidney Feller, Steven Orr, Rex Livingston, Gene Ferguson, Charles Schmitt, Janice Wolgamot, Angela Williams, and unknown members of the board of managers of LaCasa Grande. The individual named defendants as of March 27, 1987, were members of the board of managers, also known as the board of directors, of the LaCasa Grande Condominium Association. Count IV of Robinson's complaint was against Carol Dossett, a resident of LaCasa Grande.

Count III, at issue here, alleged the defendant managers managed the common elements of LaCasa Grande. They operated and maintained a swimming pool on the premises. The managers purportedly had a duty to maintain the pool in a safe condition and to exercise due care so the decedent could recreate in the pool. The complaint alleged the following acts of negligence, *i.e.*, omissions, by the individual managers: failure to employ lifeguards, failure to provide sufficient lifesaving devices, failure to properly supervise the pool, failure to warn the decedent of the inherent dangers of swimming, failure to keep a proper lookout for the decedent, failure to provide instruction and equipment for association members on the prevention of injury, failure to teach the decedent's parents how to use existing lifesaving equipment, failure to maintain the common areas of the condominium complex in violation of section 18.4(a) of the Condominium Act (Ill. Rev. Stat. 1985, ch. 30, par. 318.4(a)), failure to reasonably accommodate the needs of handicapped unit owners (the decedent's parents are blind) (see Ill. Rev. Stat. 1985, ch. 30, par. 318.4(q)), failure to anticipate the decedent's parents would use the pool, and failure to provide adequate safeguards for the decedent's safety.

Count III also averred the defendants carelessly and negligently caused the decedent's death when they gave her or her parents a key to the pool facility when they knew or should have known injury or death would occur if the decedent used the facilities. Count IV of the complaint, against Dossett, alleged it was Dossett who gave the decedent a key to the pool area. Robinson sought damages in excess of $15,000 on behalf of the estate.

LaCasa Grande filed a motion to dismiss, pursuant to section 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) on July 13, 1989, seeking to dismiss count II and the individual defendants-appellees to dismiss count III of the complaint. On the same day, LaCasa Grande also filed a motion to dismiss count II, and the individual defendants-appellees to dismiss count III of the complaint pursuant to section 2—615 of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 2—615). The parties briefed and argued the section 2—619 motion. The court deferred a hearing on the section 2—615 motion pending resolution of the section 2—619 motion. The circuit court sent a letter to the attorneys dated October 11, 1989, in which it stated the section 2—615 motion had been allowed. Believing this to be erroneous, the defendants filed a motion to clarify the record and, on November 14, 1989, the court corrected the October 11, 1989, docket entry and allowed the section 2—619 motion as to count III, without stating its reasons for granting the motion, and denying the motion as to count II. The court found no just reason to delay enforcement of the order dismissing count III of the complaint with prejudice (the section 2—619 motion), and the plaintiff filed this appeal.

■■■ A complaint should not be dismissed, pursuant to section 2—619, unless it clearly appears no set of facts can be proved which will entitle the plaintiff to recover. (*Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 360-61, 466 N.E.2d 224, 226.) In assessing a section 2—619 motion to dismiss, the trial court must take all facts properly pleaded as true. (*Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 505, 485 N.E.2d 372, 374.) On review, the appellate court is concerned only with questions of law presented by the pleadings. (*Ronning Engineering Co. v. Adams Pride Alfalfa Corp.* (1989), 181 Ill. App. 3d 753, 758, 537 N.E.2d 1032, 1035.) "The standard of review on appeal is whether the complaint alleged facts which sufficiently state a cause of action." *Alford v. Phipps* (1988), 169 Ill. App. 3d 845, 857, 523 N.E.2d 563, 571.

We begin with an examination of condominium association law in Illinois, still a new area in this State. The Condominium Act makes the unit owners' association responsible for the overall administration of the property through the association's elected board of managers. (Ill. Rev.

Stat. 1985, ch. 30, par. 318.3.) The association has all the powers and responsibilities of a not-for-profit corporation, as specified in the Not For Profit Corporation Act (Ill. Rev. Stat., 1986 Supp., ch. 32, par. 101.01 *et seq.*), regardless of whether the association is incorporated (Ill. Rev. Stat. 1985, ch. 30, par. 318.3), so long as such powers and responsibilities are not inconsistent with the Condominium Act or the condominium instrument. The board of directors of a not-for-profit corporation constitutes the board of managers provided for in the Condominium Act. (Ill. Rev. Stat. 1985, ch. 30, par. 318.1(d).) All powers, privileges, and obligations of the board of managers under the Condominium Act or condominium instrument may be performed by the corporation or the members of its board of directors. Ill. Rev. Stat. 1985, ch. 30, par. 318.1(d).

The Condominium Act specifically places responsibility for the operation, care, upkeep, maintenance, replacement, and improvement of the common elements with the board of managers; the board of managers has the authority to adopt and amend rules and regulations covering the details of the operation and use of property, and to reasonably accommodate the needs of a handicapped unit owner as required by the Illinois Human Rights Act (Ill. Rev. Stat. 1985, ch. 68, par. 1—101 *et seq.*) in the exercise of its powers with respect to the use of the common elements. (Ill. Rev. Stat. 1985, ch. 30, pars. 318.4(a), (h), (q).) "In the performance of their duties, the officers and members of the board are required to exercise, whether appointed by the developer or elected by the unit owners, the care required of a fiduciary of the unit owners." (Ill. Rev. Stat. 1985, ch. 30, par. 318.4.) LaCasa Grande's declaration of condominium, dated May 15, 1973, places responsibility for maintenance, repairs, and replacement of the common elements with the board of managers and reserves to the board of managers the exclusive authority to adopt or amend administrative rules and regulations governing the use, occupancy, and control of the common elements. The bylaws place similar powers and duties in the board of managers.

■■ The first issue in this case, a narrow one, is whether the Not For Profit Corporation Act protects individual board members from liability, as asserted by defendants in the motion to dismiss and on appeal. Under the Condominium Act, the board of managers, through the association, has the powers and responsibilities of a not-for-profit corporation. (Ill. Rev. Stat. 1985, ch. 30, par. 318.3.) The Not For Profit Corporation Act provides:

> "No director or officer serving without compensation, other than reimbursement for actual expenses, of a corporation organized under this Act *and* exempt, or qualified for exemption, from tax-

ation pursuant to Section 501(c) of the Internal Revenue Code of 1954 [see 26 U.S.C. §501(c) (1982 & Supp. IV 1986)], as amended, shall be liable, and no cause of action may be brought, for damages resulting from the exercise of judgment or discretion in connection with the duties or responsibilities of such director or officer unless the act or omission involved willful or wanton conduct \*\*\*.'' (Emphasis added.) Ill. Rev. Stat., 1987 Supp., ch. 32, par. 108.70.

To exempt the board of managers from liability under this statute, several prerequisites must be met. First, the directors must serve without compensation. Second, the corporation must be organized under the Not For Profit Corporation Act. Next, the corporation must be exempt from or qualify for exemption from taxation under Federal law. (See 26 U.S.C. §501(c) (1982 & Supp. IV 1986).) If these requisites are satisfied, then the analysis moves to the final requirement: the conduct of the directors or officers must not have been wilful or wanton.

■ The Not For Profit Corporation Act does not exempt the board of managers of LaCasa Grande from liability, though they evidently serve without compensation. LaCasa Grande was not organized under the Not For Profit Corporation Act in effect at the time (Ill. Rev. Stat. 1973, ch. 32, par. 163a1 *et seq.*). As shown by the record on appeal, its declaration of condominium states it was organized under the Condominium Act (Ill. Rev. Stat. 1973, ch. 30, par. 301 *et seq.*).

LaCasa Grande is not exempt nor does it qualify for exemption from taxation under Federal law (26 U.S.C. §501(c) (1982 & Supp. IV 1986)). To qualify for tax-exempt status, the common areas at LaCasa Grande would have had to be open to the general public.

"Significantly, in 1976 Congress amended the Internal Revenue Code to create a specialized exemption for 'homeowners associations' Tax Reform Act of 1976, Pub. Law No. 94—455, 90 Stat. 1520 §2101. The legislative history of the new section 528 reveals Congress' assessment of the then existing law and particularly the scope of the social welfare exemption provided by section 501(c)(4).

'Under present law, generally a homeowner association may qualify as an organization exempt from federal income tax (under sec. 501(c)(4) of the Code) only if it meets three requirements. (Rev. Rul. 74—99, 1974—1 C.B. 131). First, the homeowner's association must serve a "community" which bears a reasonably, recognizable relationship to an area ordinarily identified as a governmental subdivision or unit. Second, it must not conduct activities directed to the exterior maintenance of

any private residence. Third, common areas or facilities that the homeowner's association owns and maintains must be for the use and enjoyment of the general public.'

H.R. Rep. No. 94—658, 94th Cong., 1st Sess. at 326-32; S. Rep. No. 94—938, 94th Cong. 2d Sess. at 393, U.S. Code Cong. & Admin. News 1976, pp. 2897, 3222-28, 3821." *Flat Top Lake Association, Inc. v. United States* (4th Cir. 1989), 868 F.2d 108, 111.

See H.R. Rep. No. 658, 94th Cong., 1st Sess. at 326, *reprinted in* 1976 U.S. Code Cong. & Admin. News (90 Stat.) 2897, 3222, citing Rev. Rul. 74—99, 1974—1 C.B. 131.

Neither the condominium declaration nor the bylaws provide for opening LaCasa Grande's common areas to the public. Therefore, the Not For Profit Corporation Act does not apply to this case and it is unnecessary to discuss whether the allegations of conduct of the members of the board of managers suffice as wilful and wanton. The Not For Profit Corporation Act does not exempt the board of managers from liability as they contend.

The second issue plaintiff raises is whether the members of the board of managers of LaCasa Grande, as directors of a corporation, can be held liable for negligent performance of their duties. The defendants argue Illinois case law holding corporate boards of directors are not liable for corporate action, inaction, and malfeasance should be applied to this case. The defendants claim they cannot be sued because the complaint "does not allege that any of the managers did anything outside of their capacity as directors of the corporation." In support of their claim they cite section 108.70 of the Not For Profit Corporation Act (Ill. Rev. Stat., 1987 Supp., ch. 32, par. 108.70(a)). As explained, the statute is inapplicable to this case.

■ The members of the board of managers cannot be liable for negligent performance of their duties. The Condominium Act specifically makes the members of the board of managers fiduciaries of the unit owners. (Ill. Rev. Stat. 1985, ch. 30, par. 318.4.) The law in Illinois is that breach of a fiduciary duty is not a tort. The Illinois Supreme Court has regarded the breach of a fiduciary duty as controlled by the substantive laws of agency, contract and equity. (*Kinzer v. City of Chicago* (1989), 128 Ill. 2d 437, 445, 539 N.E.2d 1216, 1220.) Thus the members of the board of managers cannot be liable in tort for breaches of their fiduciary duties to the unit owners.

We note in *Wolinsky v. Kadison* (1983), 114 Ill. App. 3d 527, 449 N.E.2d 151, the plaintiff sought damages from the condominium association, the board of managers, individually and as a board, the companies employed to manage the condominium complex, and an employee of the

management company. The plaintiff owned a unit in the condominium and contracted to sell that unit and purchase another unit in the same condominium. The board of managers then notified her it was exercising its right of first refusal and the owner of the second unit terminated his contract to sell to the plaintiff. The plaintiff alleged that in exercising its right of first refusal, the board of managers acted without the affirmative two-thirds vote of the owners, as required by the condominium by-laws, thereby breaching its fiduciary duty. The circuit court granted the defendants' section 2—619 motion to dismiss.

The appellate court stated:

"A fiduciary relationship exists where there is special confidence reposed in one who, in equity and good conscience, is bound to act in good faith with due regard to the interests of the other. (*Jones v. Eagle II* (1981), 99 Ill. App. 3d 64, 72, 424 N.E.2d 1253, 1259.) We believe that all condominium association officers and board members become fiduciaries to some degree when they take office. (See P. Rohan and M. Reskin, Condominium Law and Practice sec. 10A.06 (1982); Hyatt & Rhoads, *Concepts of Liability in the Development and Administration of Condominium and Home Owners Associations*, 12 Wake Forest L. Rev. 915 (1976).) Because the association officers and board members owe a fiduciary or quasi-fiduciary duty to the members of the association, they must act in a manner reasonably related to the exercise of that duty, and the failure to do so will result in liability not only for the association but also for the individuals themselves. (See Hyatt & Rhoads, *Concepts of Liability in the Development and Administration of Condominium and Home Owners Associations*, 12 Wake Forest L. Rev. 915, 946 (1976).)" (*Wolinsky*, 114 Ill. App. 3d at 533-34, 449 N.E.2d at 157.)

The case is distinguishable because it was not a negligence action, as is this case. There the counts stated causes based on violation of bylaws, ordinance violation, and wilful and wanton disregard for the condominium bylaws. We note, it is not clear the issue before us was raised by the parties in *Wolinsky*.

In 1984, the year following *Wolinsky*, the State legislature amended the Condominium Act, adding the clause within section 18.4 (previously quoted) which sets forth the board of managers' duty of care. Pub. Act 83—833, §1, eff. July 1, 1984 (1983 Ill. Laws 5424); see Ill. Rev. Stat. 1985, ch. 30, par. 318.4.

Also distinguishable is *Schoondyke v. Heil, Heil, Smart & Golee, Inc.* (1980), 89 Ill. App. 3d 640, 411 N.E.2d 1168. The plaintiff sued the unit owners' association, the condominium association, and Tekton Cor-

poration, not the individual members of the board of managers of the condominium association.

 In summary, the Not For Profit Corporation Act does not protect the individual members of LaCasa's board of managers from liability because the statute is inapplicable. Nevertheless, we affirm the circuit court's order dismissing count III of the complaint because it failed to state a cause of action recognized in Illinois. As fiduciaries, the individual members of the board of managers were not and cannot be liable in tort for breach of their fiduciary duties. The circuit court of Sangamon County is affirmed.

Affirmed.

SPITZ and McCULLOUGH, JJ., concur.