Michael MESSMAN, Keith Oberlin, Daniel West, Richard Sorg, James Noll, Robert Amber, and Michael Heastan, Plaintiffs–Appellants,

v.

Paul HELMKE, Payne Brown, Timothy McCaulay, Steven Hinton, Charles Weinraub, Hana Stith, Donald Stedge, City of Fort Wayne, and Professional Firefighters Union, Local 124 IAFF, Defendants–Appellees.

No. 96–4038.

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 20, 1997[1].

Decided Jan. 15, 1998.

---

1. On April 8, 1997, we granted the appellants' motion to waive oral argument. Therefore, the appeal is submitted on the briefs and record. See Fed. R.App. P. 34(a); Cir. R. 34(f).

Michael L. Muenich (submitted on brief), Nancy Beggs, Hand, Muenich & Wilk, Highland, IN, John C. Ruckelshaus, Roland, Hasbrook & O'Connor, Indianapolis, IN, for Plaintiffs–Appellants.

J. Timothy McCaulay, Helmke, Beams, Boyer & Wagner, Fort Wayne, IN, for Paul Hemke, Payne Brown, Steve Hinton and Charles Weinraub.

Joseph R. Reyna, Thomas A. Woodley, Douglas Steele, Mulholland & Hickey, Washington, DC, for Fort Wayne Professional Fire Fighters Union, Local 124 IAFF.

Before POSNER, Chief Judge, and BAUER and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Seven City of Fort Wayne firefighters brought this suit under 42 U.S.C. § 1983, challenging a provision in a collective bargaining agreement (CBA) between the City and the Firefighters Union that prohibits city firefighters from participating in other firefighting organizations. The firefighters also challenge a provision of the Union's constitution that prohibits advocacy of, or membership in, other firefighting organizations. The firefighters, who want to serve as volunteers in other fire departments while off duty, alleged that the CBA and the Union's constitution violate their First Amendment rights to freedom of speech and association.

The CBA, ratified on September 15, 1995, and effective on January 1, 1996, contains the following provision in Article 20, Section 7:

> Other than provided in Article 29, Section 1(f), active members of the Fort Wayne Fire Department shall not be restricted in off-duty employment, except that they may not work for, or volunteer for, any other paid or volunteer fire department within Allen County, or with any fire department outside Allen County which has a mutual aid agreement with the City of Fort Wayne.

Article XI, Section 1E, of the Union's constitution provides that "advocating or encouraging any labor or other rival organization or acquiring membership in any such organization, including volunteer fire departments or associations" is misconduct subject to reprimand, fine, suspension from office or membership, and expulsion from the Union. Additionally, another portion of the CBA is important, for reasons that will become clear; city firefighters are entitled to up to a year of paid sick leave if an injury necessitating a leave of absence occurs when a firefighter is off duty.

The firefighters sued the City and the Union alleging that the CBA and the constitution "effectively bar Plaintiffs both from participating in volunteer firefighting service and from verbally advocating, defending, or even mentioning such service." The firefighters assert that the City and the Union "conspired to deprive Plaintiffs' exercise of their [First] Amendment rights of free association and their First Amendment rights of free speech." The parties filed cross-motions for summary judgment and the firefighters lost. In granting summary judgment for the City and the Union, the district judge determined that the firefighters failed to establish that their speech and expressive association touched on matters of public concern and, in the alternative, that the City's interest in promoting the efficiency of the fire department far outweighed any minimal interest the firefighters might have in providing their services to others on a volunteer basis.

On appeal, the firefighters challenge the district court's conclusion that their participation in other firefighting organizations does not touch on issues of public concern and, further, argue that the district court judge botched the often cited *Pickering/Connick* balancing test when he concluded that the City's interest in the prohibition outweighed their First Amendment interests.

As a preliminary matter, the Union argues that it is home free on at least half the case because it is not a "state actor" for purposes of the First Amendment or § 1983. In general, a union is not a state actor. *See Wegscheid v. Local Union 2911*, 117 F.3d 986, 988 (7th Cir.1997). Therefore, a union's internal governing rules usually are not subject to First Amendment prohibitions.[2] *Leahy v. Board of Trustees of Community College Dist. No. 508*, 912 F.2d 917, 921 (7th Cir.1990) (Under § 1983, the plaintiff "must allege facts which ... would show that the Union, a private entity, was acting under color of state law ...."); see also *Korzen v. Local Union 705*, 75 F.3d 285, 288 (7th Cir. 1996) ("The constitution of a local union ...

---

**2.** As to the CBA provision, the City is clearly subject to § 1983 liability under *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), for the municipal policy embodied in the CBA. The Union does not dispute that it was acting under color of state law when it joined with the City in drafting and ratifying the CBA. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

is a contract between the union and its members ...”; therefore, federal question jurisdiction is absent); *United States v. International Bhd. of Teamsters,* 941 F.2d 1292, 1296 (2nd Cir.1991) (actions taken pursuant to a union's constitution are not “state actions”).

The firefighters, relying on *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974), argue that the Union is a state actor for purposes of its constitutional provision: Article 20, Section 7 (of the CBA), they contend, is “inextricably intertwined” with Article XI, Section 1E (of the constitution), because the two provisions “encourage and enforce” each other. The firefighters also assert that the Union and the City conspired to deprive them of their First Amendment rights for the purpose of promoting the City's goal of annexing surrounding communities. Essentially, the firefighters maintain that the City and the Union colluded to deprive surrounding communities of their firefighting services—thereby gutting the independent firefighting capability of those communities—in order to coerce them into joining annexation agreements. In the process the defendants allegedly deprived the firefighters of First Amendment freedoms.

■ The mere fact that the constitution encourages and reinforces the CBA is insufficient, however, to bring the Union's enactment of the constitutional provision under the rubric of “state action.” *See Jackson,* 419 U.S. at 351, 95 S.Ct. at 453 (“[T]he inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the State itself.”). That the Union and Fort Wayne have complementary rules simply does not establish joint action or a nexus between Fort Wayne's contract with its firefighters and the Union's adoption of Article XI, Section 1E, of its constitution. *Cf. International Bhd. of Teamsters,* 941 F.2d at 1297 (“[G]overnmental oversight of a private institution does not convert the institution's decisions into those

of the State, as long as the decision in question is based on the institution's independent assessment of its own policies and needs.”).

■ Moreover, a bare allegation of a conspiracy between private and state entities is insufficient to bring the private entity within the scope of § 1983. *Leahy,* 912 F.2d at 922. Despite evidence that the City intended to coerce annexation, the firefighters point to no evidence that the Union shared this goal, much less enacted its questioned constitutional provision in collusion with the City for the purpose of coercing annexation. See *Cunningham v. Southlake Ctr. for Mental Health, Inc.,* 924 F.2d 106, 107 (7th Cir.1991) (“A requirement of [a conspiracy] charge therefore is that both public and private actors share a common, unconstitutional goal.”). We are especially skeptical of this conspiracy theory because the Union's constitutional provision was enacted at least four years before the CBA provision came into being. The firefighters, therefore, have failed to establish a genuine issue over whether the Union was acting under color of state law when it enacted its constitution.

■ As to the firefighters' claim that the CBA provision violates their right to freely associate, *Connick v. Myers* dictates a three-step sequence for analyzing public employees' First Amendment claims.[3] 461 U.S. 138, 146–52, 103 S.Ct. 1684, 1689–93, 75 L.Ed.2d 708 (1983) (relying on *Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)); see *Hulbert v. Wilhelm,* 120 F.3d 648, 650 (7th Cir.1997); *Brown v. Disciplinary Comm. of the Edgerton Volunteer Fire Dep't,* 97 F.3d 969, 972 (7th Cir.1996) (free speech); *Gregorich v. Lund,* 54 F.3d 410, 414 (7th Cir.1995) (freedom of association). First, we must determine whether the alleged First Amendment activities would be protected if engaged in by private citizens. If they would, we then look to whether the alleged First Amendment activities pertain to issues of public concern or whether they are purely private grievances. If the activities are matters of public concern they are protected by the First Amendment,

---

3. *But see Balton v. City of Milwaukee,* 133 F.3d 1036, also decided today, which questions wheth-

er *Connick* is useful in cases involving freedom of association claims.

and we must then balance the governmental interests served by suppression of the activities against the interests of the employees and the public in the protected activities. If the governmental interests outweigh those of the employees and the public, then the First Amendment is not violated. Each step involves a question of law that we review *de novo*. *See, e.g., Connick,* 461 U.S. at 148 n. 7, 103 S.Ct. at 1690 n. 7; *Brown,* 97 F.3d at 974; *Griffin v. Thomas,* 929 F.2d 1210, 1212 (7th Cir.1991).

In this case, as in many association cases, the first and second steps of the *Connick* test overlap. *See Roberts v. United States Jaycees,* 468 U.S. 609, 622, 104 S.Ct. 3244, 3252, 82 L.Ed.2d 462·(1984) ("[P]rotection to collective effort on behalf of shared goals is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority."); *Marshall v. Allen,* 984 F.2d 787, 800 (7th Cir.1993) ("[T]he right to freedom of association protects an individual's ability to associate with others for the purpose of propagating and expressing ideas and beliefs, including political, social, economic, educational, religious, and cultural concerns."). It seems to us that associating with firefighting organizations in Fort Wayne's surrounding communities has taken on a political sheen. The record contains evidence supporting the firefighters' claim that they associate with the volunteer fire departments to support and advocate the political, social, and economic goal of opposing annexation by Fort Wayne of the surrounding communities (one way, perhaps, of attempting to maintain cultural diversity and, certainly, association for the purpose of expressing political beliefs). It would be unconstitutional for Fort Wayne to suppress association intended to express these beliefs by a private citizen, and therefore the firefighters have satisfied their obligation under the first step of the *Connick* test. Likewise, because association for these purposes touches on matters of public concern, the second step is satisfied as well. In any event, the challenge does not involve a "purely personal grievance." The firefighters have met their obligation to come forth with evidence in support of steps one and two of the *Connick* test. We turn, then, to the

third step-balancing the competing interests claimed by the parties.

 The .third step of the *Connick* test requires a weighing of the firefighters' interest in freedom of association against the City's interests as an employer. In *Waters v. Churchill* the Supreme Court explained the reasoning behind this balancing:

> Government agencies are charged by law with doing particular tasks. Agencies hire employees to help do those tasks as effectively and efficiently as possible. When someone who is paid a salary so that she will contribute to an agency's effective operation begins to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain her.

511 U.S. 661, 674–75, 114 S.Ct. 1878, 1887, 128 L.Ed.2d 686 (1994). Additionally, the Court has enumerated several factors pertinent to the *Connick* balance of interests:

> whether the [expressive association] impairs discipline by superiors or harmony among coworkers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the [employee's] duties or interferes with the regular operation of the enterprise.

*Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987). "Interference with work, personnel relationships, or the speaker's job performance can detract from the public employer's function; avoiding such interference can be a strong state interest." *Id.* Courts give "substantial weight to government employers' reasonable predictions of disruption, even when the speech involved is on a matter of public concern...." *Waters,* 511 U.S. at 673, 114 S.Ct. at 1887 (plurality opinion).

The defendants set forth a litany of reasons for prohibiting off-duty firefighting by city firefighters. But, like the district court, we believe only a few bear discussion given the factors noted in *Rankin*. They are: (1) promoting efficiency in the fire department's service delivery through a reduction in off-duty injuries, avoidance of conflicts between firefighters' duties to Fort Wayne and their

duties to other firefighting organizations, and improvement of morale by minimizing dissension among the City's firefighters; and (2) limiting the City's potential financial liability for paid sick leave due to injuries incurred while engaged in off-duty firefighting activities.

Efficiency and fiscal responsibility are powerful governmental interests. Although one may harbor doubts about the City's argument that it limited off-duty firefighting to improve overall morale because other firefighters opposed off-duty firefighters' activities. We agree that reducing off-duty injuries, avoiding conflicts between city firefighters' duties to the City and duties to other firefighting organizations, and minimizing liability for paid sick leave are interests that outweigh the firefighters' interests in volunteering for other firefighting organizations.

Relying on *United States v. National Treasury Employees Union*, the firefighters argue that the interests propounded by the City are unsupported by evidence and invalid because other off-duty activities pose the same threat to Fort Wayne's interests as does off-duty firefighting. 513 U.S. 454, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995). In *National Treasury*, the Supreme Court held that "[w]hen the Government defends a regulation on speech as a means to redress past harms or prevent anticipated harms, it ... must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Id.* at 475, 115 S.Ct. at 1017 (quotation and citations omitted). The Court explicitly refused to defer to the government's predictions of harm that could result absent the speech restriction. *Id.* at 475 n. 21, 115 S.Ct. at 1017 n. 21. Finally, the Court stated: "Imposing a greater burden on speech than on other off-duty activities assumed to pose that same threat to the efficiency of the [governmental] service is, at best, anomalous." *Id.* at 475, 115 S.Ct. at 1017.

The firefighters assert that the City put forth no evidence of injuries resulting from off-duty firefighting, or that it provided paid sick leave as a result of such injuries. Moreover, the firefighters argue, even given the prohibition against volunteer firefighting, a host of other ultrahazardous nonspeech activities presenting an even higher risk of injury remain open to them in their off-duty hours. As to the assertion that duties to the City might conflict with duties to other firefighting organizations, the firefighters argue that any Fort Wayne firefighter who has an off-duty job will have such a conflict and point to evidence that other off-duty jobs require paid firefighters to be away from the Fort Wayne area. They argue that, under *National Treasury*, the prohibition singling out their off-duty firefighting activities for prohibition when the same harms to the City's interests result from so many other off-duty occupations is unconstitutional because the purported interests served are highly suspect. Finally, the firefighters bolster their *National Treasury* argument by pointing to evidence that the real reason for the prohibition is the City's desire to "squelch" political support for the independence of the surrounding communities.

*National Treasury*, however, is easily distinguishable from our case. The law at issue in *National Treasury* imposed a blanket prohibition on the speech of 1.7 million federal employees; that is, the federal employees were prohibited from accepting honoraria from anyone for speaking on any topic no matter how remote from their jobs. Although the government justified the speech ban on the grounds that it minimized the appearance of impropriety on the part of government employees and was easy to administer, the Court held that the nexus between the government interest and the speech at issue was simply too tenuous to support the all-out ban on speech. Moreover, that law was internally inconsistent.

The prohibition at issue here is very different from the one in *National Treasury*. Here, the ban on off-duty firefighting closely relates to the harms Fort Wayne wishes to avoid. Moreover, the prohibition is not a blanket restriction on speech; the City has not cut off all, or even many, of the alternate venues available for firefighters to voice their support for the unannexed communities. Although the Union rules may dictate expulsion if the firefighters engage in such advocacy, the firefighters have not identified any harm resulting from union expulsion. In any

event, enforcement of union rules is not state action, so unless Fort Wayne participates in the enforcement (for instance, by making union membership a job requirement), harm resulting from union expulsion would not be cognizable in § 1983. On balance, the defendants' interests in efficiency and fiscal responsibility outweigh the firefighters' associational rights.

■ Finally, although cases such as *Waters* and *Rankin* suggest that we have the power to review the City's actual motive for including the off-duty firefighting ban in the CBA, we do not. *Waters* and *Rankin* involved individual personnel decisions about single employees, not broad-based rules applying to all employees. The Supreme Court consistently refuses to examine the motive behind the lawful exercise of executive or legislative power. *See United States v. O'Brien*, 391 U.S. 367, 383–84, 88 S.Ct. 1673, 1682–83, 20 L.Ed.2d 672 (1968), and cases cited therein. Here, Fort Wayne had the power to enter into the CBA with the Union, and the provision of the CBA at issue is constitutional on its face. Therefore, we will not inquire into the allegedly real motives of the City in pursuing the prohibition on off-duty firefighting.

For these reasons, the district court's judgment is

AFFIRMED.