Carole SPENCER, Plaintiff,

v.

The **ILLINOIS COMMUNITY ACTION ASSOCIATION, an Illinois not for profit corporation, Grey Warrner, Thornton Ridinger, Vincent E. Thomas, John Dimit, Dwight Lucas, Frank Schwab, Ken PettiJohn, Granada Williams, MacFarland Bragg, Gail Evans, Dennis Williams, Donna Ferency, and Judith Eikstadt, Defendants.**

No. 99–3125.

United States District Court, C.D. Illinois, Springfield Division.

Sept. 26, 2001.

James P. Baker Law Offices of James P. Baker, Springfield, IL, for Plaintiff.

David A. Rolf, Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., Springfield, IL, Michael H. Cramer, Sachnoff & Weaver, Chicago, IL, Matthew D. Bilinsky, Michael J. McGee, Susan M. Osthus, Office of IL Attorney General, Springfield, IL, for Defendant.

## *OPINION*

RICHARD MILLS, District Judge.

In the context of ... 42 U.S.C. § 1983 ..., we have said " 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment."

> *Morse v. Republican Party of Virginia,* 517 U.S. 186, 249, 116 S.Ct. 1186, 134 L.Ed.2d 347 (1996)
>
> (Kennedy J., dissenting).

Because Plaintiff's employer was a private entity, and because she failed to establish that her employer conspired with the State or any State official(s) to fire her in violation of her First Amendment rights, summary judgment must be entered in favor of Defendants.

## I. BACKGROUND

Carole Spencer was the executive director of the Illinois Community Action Association ("the Association") from 1991 until she was terminated on January 8, 1998. At all relevant times the Association was a not for profit corporation whose membership consisted of 42 community action agencies from throughout the State of Illinois. The purpose of each community action agency was to promote economic opportunities for low income individuals. The Association's purpose was to promote and to further the interests of the community action agencies and to provide various services to them. Defendants Vincent E. Thomas,[1] John Dimit, Dwight Lucas,

---

1. At all times relevant to this motion, Vincent E. Thomas was the president of the Association.

Frank Schwab, Ken Pettijohn, Granada Williams, Macfarland Bragg, Gail Evans, Dennis Williams, Donna Ferency, and Judith Eikstadt ("the Association Defendants") served on the Association's board of directors.

The community action agencies which were members of the Association were funded in part by community service block grants sponsored by the United States Department of Health and Human Services ("HHS"). The Illinois Department of Commerce and Community Affairs ("the Department") served as a conduit in the administration of the community service block grants sponsored by HHS. Defendant Grey Warrner served as the Department's chief of its office of community services. Defendant Thornton Ridinger served as the Department's chief of its division of economic opportunity. In their respective positions, Warrner and Ridinger ("the State Defendants") supervised, administered, and oversaw the administration of various community block grant programs as well as other financial assistance programs which benefitted the Association and its members.

Under the community service block grant program, ninety percent of the grant's funds were to be given to the local community action agencies. The remainder was available to be used by the Department for administering the program and for other purposes within the Department's discretion.

In 1985, the Association and several community action agencies, with the approval and encouragement of the Department, formed the Illinois Ventures for Community Action ("the Illinois Ventures") as a not for profit corporation. The Association and the community action agencies intended that, in a manner consistent with the terms of the grant program, they would pool a portion of their unused funds derived from the community service block grants and assign those funds to the Illinois Ventures in order to accumulate larger sums of money which would be available for economic development activities.

In 1996, representatives of HHS visited the Department, the Association, and the Illinois Ventures in order to monitor and inspect the on-going administration of the community service block grant fund program. During her conversations with HHS's representatives, Plaintiff formed the opinion that the Department's policy that required the community action agencies to return unused block grant funds to the Department, rather than allowing the agencies to retain the funds for up to three years before returning it, was inconsistent with federal law. Plaintiff communicated these concerns to the Department and also wrote a letter to HHS seeking clarification of the Department's carryover policy with respect to unused community service block grant funds.

Later that same year, Plaintiff attended a meeting in Washington, D.C., regarding the community action programs. During this conference, Plaintiff again met with HHS's representatives and discussed with them her concerns regarding the Department's carryover policy. Upon her return to Illinois, Plaintiff notified the Department of her conversations with HHS's representatives.

In June 1997, Plaintiff met with Norm Sims who had recently been appointed as interim director of the Department. During this meeting, Plaintiff advised Sims of her opinion that the Department's policies in administering community block grant funds were, in certain respects, contrary to the requirements of federal law and that

the continuation of those policies placed at risk the availability of the community service block grant funds to Illinois community action agencies for the fiscal year 1998. Following that meeting, Sims reported his discussions with Plaintiff to the State Defendants.

The next day, Plaintiff received a telephone call from Defendant Thomas who had been informed by the State Defendants of her meeting with Sims. Defendant Thomas advised Plaintiff that the State Defendants were upset about her conversation with Sims. In fact, Defendant Thomas told Plaintiff that she had ruined the relationship between the Department and the Association, and he recommended that she resign as the executive director of the Association.

Furthermore, Defendant Thomas instructed Plaintiff not to speak with any representative of the Department without him also being present, nor was she to speak with Sims again. Despite this instruction, Plaintiff telephoned Sims to apologize for any problems which her conversation with him had caused between the Department and the Association.

In July 1997, Plaintiff attended a retreat sponsored by the Association's board of directors. During this retreat, the Association's board of directors voted to place certain executive constraints upon Plaintiff. Per Plaintiff's request, Defendant Thomas reduced these executive constraints to writing. During the second day of the retreat, the Association's board of directors engaged in a discussion regarding the dispute between HHS and the Department concerning the Department's carryover policy. As a result of this discussion, the Association's board of directors decided that it had no dispute with the Department's position concerning the carryover policy of block grant funds and issued a memorandum memorializing its decision.

On November 4, 1997, Plaintiff had a telephone conversation with Defendant Thomas. During that conversation, Defendant Thomas indicated that several members of the Association's board of directors wanted to meet in an executive session and that he believed that the board's confidence in her was weakening. Defendant Thomas again recommended that she resign because she was an agitator of the dispute between HHS and the Department concerning its carryover policy and because she had caused a deterioration in the relationship between the Association and the Department by meeting with Sims. On November 5, 1997, Defendant Thomas personally met with Plaintiff and expressed these same concerns to her.

During the Association's board of director's meeting on November 7, 1997, Defendant Ridinger informed the board that if the dispute between the Department and HHS was resolved in favor of the Department, discretionary funds would be used to provide monies of the type that the Association had received in the past; however, if the decision was to the contrary, the discretionary funds would be used in other ways. In addition, during this meeting, the Association's board of directors approved the recommendation of the executive committee that Plaintiff be terminated from employment with the Association.

On January 8, 1998, Plaintiff attended a meeting of the Association's board of directors. At that meeting, the board informed her that she was fired. Although she asked for a reason for her termination, none was provided. That same day, Defendant Thomas informed the Association's board of directors that 90% of the community service block grant funds were going to be released by the Department.

On June 4, 1999, Plaintiff filed the instant suit against Defendants pursuant to 42 U.S.C. § 1983. Therein, Plaintiff al-

leged that she was terminated in retaliation for exercising her right to free speech in violation of the First Amendment to the United States Constitution. Specifically, Plaintiff alleged that she was fired because she wrote a letter to HHS and spoke to Sims about the Department's carryover policy concerning unused block grant funds. In addition, Plaintiff alleged that Defendants tortiously interfered with her continued employment expectation. Defendants have now filed motions for summary judgment as to all Counts of Plaintiff's Complaint.

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see Ruiz-Rivera v. Moyer*, 70 F.3d 498, 500–01 (7th Cir.1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. *Addickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir.1997).

## III. ANALYSIS

Defendants have raised a plethora of reasons as to why they are entitled to summary judgment in this case. Some of these arguments apply to both sets of Defendants, and some apply only to one group of Defendants. Both the Association Defendants and the State Defendants argue that they are entitled to summary judgment on Plaintiff's § 1983 claims because she has failed to establish that her termination arose under "color of law." Moreover, both the Association Defendants and the State Defendants assert that they are entitled to summary judgment on Plaintiff's First Amendment claims because she has failed to prove a causal connection between her speech and her discharge and because her speech was so disruptive of the workplace that it should not be given First Amendment protection.[2]

Furthermore, the Association Defendants contend that they are immune from liability on both her § 1983 claims and her pendent state law claims based upon the statutory immunity provided by the Illinois Not For Profit Corporation Act. 805 ILCS 105/018.70(a). The Association Defendants also assert that they are entitled to summary judgment on Plaintiff's tortious in-

---

**2.** Defendants also contend that Plaintiff has failed to establish a property right which is necessary in order to maintain her Fourteenth Amendment claims. However, Plaintiff has only referenced the Fourteenth Amendment as it relates to her First Amendment claims; she has not alleged a separate due process or equal protection claim under the Fourteenth Amendment.

terference claims because she failed to prove that they were acting solely for their own personal gain or solely to harm her when they voted to fire her.

Finally, the State Defendants argue that they are entitled to summary judgment on Plaintiff's § 1983 claims because she failed to offer any evidence that they were involved in her termination decision, because they are protected from liability based upon the doctrine of qualified immunity, and because her claims against them are barred by the Eleventh Amendment to the United States Constitution. As for her state law claims, the State Defendants contend that Plaintiff has failed to make a sufficient showing that they tortiously interfered with her continued employment expectation.

### A. COLOR OF LAW

"Liability under § 1983 requires proof of two essential elements: that the conduct complained of (1) 'was committed by a person acting under color of state law' and (2) 'deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Yang v. Hardin,* 37 F.3d 282, 284 (7th Cir.1994), quoting *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327, 331–32, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). "To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that": (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, ... and (2) those individual(s) were " 'willful participant[s] in joint activity with the State or its agents.'" *Fries v. Helsper,* 146 F.3d 452, 457 (7th Cir.1998), quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Normally, "a State ... can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Rendell–Baker v. Kohn,* 457 U.S. 830, 840, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), quoting *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). On the other hand,

> to act "under the color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting ... "under color" of law for purposes of § 1983 actions.

*Dennis v. Sparks,* 449 U.S. 24, 27–28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980).

The United States Court of Appeals for the Seventh Circuit has

> held that to establish joint action, a plaintiff must demonstrate that the public and private actors shared a common, unconstitutional goal. In other words, a plaintiff must establish that a conspiracy, or an understanding, to violate the plaintiff's constitutional rights existed between the public and private actors.

*Stagman v. Ryan,* 176 F.3d 986, 1003 (7th Cir.1999)(internal citations omitted). Conclusory allegations regarding the existence of a conspiracy or an understanding are insufficient to create a material issue of fact. *Id.* Thus, "[a]lthough the conduct of private parties lies beyond the Constitution's scope in most instances, governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government and, as a result, be subject to constitutional constraints." *Edmonson v.*

*Leesville Concrete Co.,* 500 U.S. 614, 620, 111 S.Ct. 2077, 114 L.Ed.2d 660, (1991); *Sherman v. Community Consol. Sch. Dist.,* 8 F.3d 1160, 1168 (7th Cir.1993).

The Seventh Circuit has identified four discernible situations in which the actions of a private party might have constitutional implication:

> Courts will find state action despite the presence of a private party in four discernible situations. First, state action exists given a "symbiotic relationship" between the private actor and the state. Second, the "nexus test" finds state action when the state commands or encourages the private discriminatory action. A third situation sufficient to support a finding of state action occurs when a private party carries on a traditional public function. Finally, state action is present when the involvement of governmental authority aggravates or contributes to the unlawful conduct.

*Air Line Pilots Ass'n, Int'l v. Department of Aviation of the City of Chicago,* 45 F.3d 1144, 1149 (7th Cir.1995)(internal citations omitted).

■ In the instant case, the Court finds that Plaintiff has failed to tender any evidence that the Association Defendants and the State Defendants engaged in any conspiracy or had an understanding to violate Plaintiff's constitutional rights. *Stagman,* 176 F.3d at 1003. Each of the Association Defendants testified that no State official directed or had an understanding with him or her to fire Plaintiff. *Id.* Likewise, the State Defendants testified that they never conspired or entered into an understanding with any Association Defendant to violate Plaintiff's constitutional rights. *Id; see Fonda v. Gray,* 707 F.2d 435, 438 (9th Cir.1983)(holding that in order "[t]o prove a conspiracy between private parties and the government under § 1983, an agreement or 'meeting of the minds' to violate

constitutional rights must be shown.") (citations omitted).

On the other hand, Plaintiff has extrapolated mere conjecture and speculation in an attempt to create a genuine issue of material fact. "[A] bare allegation of a conspiracy between private and state entities is insufficient to bring the private entity within the scope of § 1983." *Messman v. Helmke,* 133 F.3d 1042, 1045 (7th Cir. 1998). It is true that Plaintiff has established that the Association's board of directors fired her after she wrote the letter to HHS and after she spoke with Sims. Likewise, it is true that Plaintiff has shown that the State Defendants conversed with the Association Defendants about Plaintiff and, in fact, complained to them about her.

■ However, the only issue about which the State Defendants complained is that Plaintiff's actions caused them to write a memorandum. In other words, her speech caused them to perform additional work. Unilateral attempts to get someone fired due to one's own laziness does not rise to the level of an agreement between private and public actors sufficient to violate that employee's constitutional rights. *See Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1352 (7th Cir.1985)(holding that "[i]n order to establish a conspiracy, the plaintiff must demonstrate that the state officials and the private party somehow reached an understanding to deny the plaintiffs their constitutional rights.").

The only evidence which Plaintiff has submitted in support of the existence of a conspiracy was that the State Defendants allegedly threatened to withhold funding from the Association until the Association Defendants terminated Plaintiff. However, Plaintiff has admitted that Sims had the final authority as to how discretionary funds under the block grant would be utilized and whether and when those funds

would be released. Nowhere has Plaintiff alleged that Sims was involved in any conspiracy.

■■■ In short, Plaintiff has wholly failed to demonstrate that the Association Defendants and the State Defendants shared a common, unconstitutional goal.[3] *Cunningham v. Southlake Ctr. for Mental Health, Inc.,* 924 F.2d 106, 107 (7th Cir. 1991). Thus, Plaintiff's First Amendment claims fail for failure to establish that she was fired under color of state law. Accordingly, the Court finds that no genuine issue of material fact exists as to whether Plaintiff was fired under color of state law and also finds that all Defendants are entitled to summary judgment as a matter of law on Plaintiff's § 1983 claims.

### B. *ILLINOIS NOT FOR PROFIT CORPORATION ACT*

■■■ As for Plaintiff's supplemental state law claims against the Association Defendants, the Court agrees with the Association Defendants that they are protected from liability pursuant to Illinois' Not for Profit Corporation Act. 805 ILCS 105/108.70(a). The Illinois Not for Profit Corporation Act provides:

No director or officer serving without compensation, other than reimbursement for actual expenses, of a corporation organized under this Act or any predecessor Act and exempt, or qualified for exemption, from taxation pursuant to Section 501(c) of the Internal Revenue Code of 1986, as amended, shall be liable, and no cause of action may be brought, for damages resulting from the exercise of judgment or discretion in connection with the duties or responsibilities of such director or officer unless the act or omission involved willful or wanton conduct.

*Id.* (footnote omitted). In order for a director to be immune from liability under the Act, he must be unpaid, the corporation must be organized under the Not for Profit Corporation Act, the corporation must be tax exempt under federal law, and the director's conduct must not be willful or wanton. *Robinson ex rel. Estate of Robinson v. LaCasa Grande Condo. Ass'n,* 204 Ill.App.3d 853, 858, 562 N.E.2d 678, 682, 150 Ill.Dec. 148, 152 (1990). "As used in this Section 'willful or wanton conduct' means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 805 ILCS 105/108.70(d).

Here, it is undisputed that the Association Defendants were not paid for their services with the Association, that the Association was organized under the Illinois Not for Profit Corporation Act, and that the Association was tax exempt under 26 U.S.C. § 501(c). In addition, Plaintiff has failed to proffer any evidence that any action(s) or conduct taken by any Association Defendant was "willful or wanton" as those terms are used in the Act. In fact, Plaintiff specifically admitted in responding to the Association Defendants' statement of undisputed facts that, in terminating her, the Association Defendants did not do so in disregard for her safety nor did they do so for personal gain. Moreover, Plaintiff has tendered no evidence that, when the Association Defendants fired her, they did so with actual or deliberate intention to cause her any harm. Accordingly, the Court finds that the Association Defendants are entitled to summary judgment on Plaintiff's supplemental state law claims because they are immune

---

**3.** Even assuming, *arguendo,* that Plaintiff established that Defendants conspired to fire her, it is clear that she has failed to prove that Defendants conspired or reached an understanding to fire her because she exercised her right to free speech.

from liability as to those Counts pursuant to the Illinois Not for Profit Corporation Act.

## C. SUPPLEMENTAL JURISDICTION

As for Plaintiff's supplemental state law claims against the State Defendants, the Court declines to exercise jurisdiction over them. 28 U.S.C. § 1367(c). The Seventh Circuit has explained:

> According to the supplemental jurisdiction statute, a district court "may decline to exercise supplemental jurisdiction" over pendent state law claims if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *see Wright v. Associated Insurance Cos., Inc.,* 29 F.3d 1244, 1250 (7th Cir.1994). This Court has stated that "the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright,* 29 F.3d at 1251; *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 727–728, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218. While there are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point to federal decision of the statelaw claims on the merits," the district judge is given broad power in determining whether such circumstances apply and thus whether it is appropriate to retain jurisdiction over the state law claims. *Wright,* 29 F.3d at 1251. "Pendent jurisdiction is a power which the district court, in the exercise of its sound discretion, may choose to grant; it is not a plaintiff's right." *Landstrom v. Illinois Dept. of Children and Family Services,* 892 F.2d 670, 679 (7th Cir.1990); *see Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. We will reverse a

district court's refusal to exercise this power only upon a showing of abuse of discretion. *Landstrom,* 892 F.2d at 679. "Decisions to relinquish pendent jurisdiction are occasionally reversed." *Disher v. Information Resources, Inc.,* 873 F.2d 136, 140–141 (7th Cir.1989)("A decision to relinquish pendent jurisdiction before the federal claims have been tried is, as we have said, the norm, not the exception, and such a decision will be reversed only in extraordinary circumstances."). In fact, this Court has characterized the district court's discretion to relinquish pendent jurisdiction as "almost unreviewable," especially when all federal claims have been dropped from the case before trial and only state law claims remain. *Huffman v. Hains,* 865 F.2d 920, 923 (7th Cir.1989). "At that point, respect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become paramount concerns." *Id.*

*Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 727–28 (7th Cir. 1998).

In their motion for summary judgment, the State Defendants specifically asked the Court to decline to exercise supplemental jurisdiction over Plaintiff's state law tort claims if the Court dismissed her § 1983 claims. Plaintiff made no response to this request. Specifically, Plaintiff did not advance any of the three well-recognized exceptions to the general rule that federal district courts should decline to exercise supplemental jurisdiction when all of the federal claims have been dismissed prior to trial, and thus, the Court declines to make her arguments for her. *See Wright v. Associated Ins. Cos., Inc.,* 29 F.3d 1244, 1250–52 (7th Cir.1994)(setting forth the three well-recognized exceptions, *i.e.,* the statute of limitations has run on a pendent claim precluding the filing of a separate

suit in state court; substantial judicial resources have already been committed so that sending the case to another court will cause substantial duplication of effort; and it is absolutely clear how pendent claims can be decided because the district court, in deciding the federal claim, decides issue which are dispositive of the pendent claim or the state law claims are patently frivolous); *see also Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir.2001)(affirming the district court's decision not to exercise supplemental jurisdiction over the plaintiff's state law claims after granting summary judgment on all of his federal claims); *see also* 28 U.S.C. § 1367(d).

Finally, because the Court has found that Defendants are entitled to summary judgment for the reasons set forth *supra*, it need not address the remaining arguments advanced by them in support of their motions for summary judgment.

*Ergo*, Defendants Illinois Community Action Association's, Thomas', Dimit's, Lucas', Schwab's, Pettijohn's, Granada Williams', Braggs', Evans', Dennis Williams', Ferency's, and Eikstadt's Motion for Summary Judgment and Defendants Warrner's and Ridinger's Motion for Summary Judgment are ALLOWED. Accordingly, summary judgment is hereby entered in favor of Defendants and against Plaintiff on all Counts of Plaintiff's Complaint except for Counts XVI & XVII. As for those Counts, the Court declines to exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(c), and Counts XVI & XVII are DISMISSED WITHOUT PREJUDICE.