Sander P. STAGMAN, Plaintiff–Appellant,

v.

James RYAN, Joseph Claps, Edward Ludwig, and Richard Jones, Defendants–Appellees.

No. 98–1943.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1999.

Decided May 6, 1999.

Michael J. Foley (argued), Foley & Foley, Chicago, IL, for Plaintiff–Appellant.

Darryl B. Simko (argued), Office of the Attorney General, Chicago, IL, for Defendants–Appellees except Jones.

Mildred F. Haggerty, Kathrin Koenig (argued), Haggerty, Koenig & Hill, Chicago, IL, for Defendant–Appellee Jones.

Before POSNER, Chief Judge, and COFFEY and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Sander Stagman brought his claims under 42 U.S.C. § 1983 against, in their individual capacities, the Illinois Attorney General, James Ryan, and Joseph Claps and Edward Ludwig, officials with the Office of the Illinois Attorney General ("AG's Office"), as well as Richard Jones, an employee of the AG's Office, who also served as president of the Illinois Federation of Teachers Local 4747 AFT/AFL–CIO ("Union"). Stagman alleges these individuals violated his First Amendment rights to free speech and free assembly through their actions that culminated in his dismissal from the AG's Office. He challenges the district court's grant of summary judgment in favor of Ryan, Claps, Ludwig, and Jones. We, however, agree with the district court's assessment that Stagman did not establish issues of material fact to support his claims and deny Stagman's appeal.

## I. History

From April 1987 until December 1995, the AG's Office employed Stagman as an accountant. His claims relate primarily to four events—a denial of vacation time, his involvement with the Union, an incident with the Palos Heights Police Department, and the Union elections—that occurred during his time with the AG's Office.

The first event occurred during the spring of 1995. In addition to his duties with the AG's Office, Stagman, with the knowledge and approval of the AG's Office, also ran a private accounting business. Because of this outside work, during the spring, he often took vacation time to meet the needs of his private clients. As was his usual practice, Stagman requested vacation time during the spring of 1995. Chief of the Department of Public Safety Joseph Claps approved the request. After learning about Stagman's plan to take a vacation, Edward Ludwig, Chief of the Department of Administration and Stagman's immediate supervisor, asked Claps to cancel Stagman's request because, Ludwig asserted, a backlog of work existed that needed Stagman's attention. Stagman disputes Ludwig's statements about this event. After the permission had been

rescinded, Illinois State Senator Howard Carroll interceded on behalf of Stagman. He brought the matter to the attention of Attorney General James Ryan, and Ryan intervened to have Stagman's vacation time restored.

Some time after the resolution of the vacation issue, Stagman became more involved in the Union, which he had joined in 1989. Richard Jones, the president of the Union, recommended Stagman to be one of the Union's stewards. Troubles ensued almost immediately. Stagman asserts that he pursued his duties aggressively, but always conducted himself appropriately. Jones, however, contends that he received complaints from other Union officers and stewards about Stagman's conduct. As a result, Jones and the other members of the Union's board removed Stagman from his position only one month after he had assumed it. Stagman claims his removal resulted from a complaint from Ludwig regarding Stagman's pursuit of another employee's complaint. Jones, however, contends that Stagman was removed from his Union position because he failed to follow the Union board's direction and cooperate with its members, failed to represent the bargaining unit members responsibly, and interfered with the activities of other stewards. Jones sent a memo to Stagman notifying him of the dismissal. He also forwarded the memo to members of the AG's Office management, including Ludwig, in accordance with the Union's bargaining agreement.

In addition to removing Stagman from the position of steward, the memo also stated that Stagman would not be a member of the Union's bargaining team for its upcoming negotiation session with the AG's Office. Stagman had volunteered to be a part of this team, but at that point had not participated in any bargaining sessions. At the time Jones circulated the memo, the Union had not yet informed the AG's Office as to whom it had selected as the members of the bargaining team. Stagman alleges that he was removed from the bargaining team because of intervention by Ludwig. Stagman contends that when Ludwig learned of Stagman's plans to participate in the bargaining sessions, Ludwig objected because he believed Stagman would be more aggressive and diligent than Jones and create problems for management during the negotiations. According to Donald Morgan, at one time acting Director of Human Resources and who before July 1, 1995, was assigned personnel duties by Ludwig, Ludwig sent another employee to persuade the Union to remove Stagman from the bargaining team. In addition, Stagman contends that a member of the Union board, Thomasina Jeffers, eventually told him that the "real" reason he was removed from the bargaining team was that Ludwig had demanded it. Stagman asserts that Jones colluded with Ludwig to remove Stagman from the bargaining team, pointing to the fact that Jones sent a copy of his dismissal letter to Ludwig.

In the fall of 1995, Stagman again became involved in union activities. At this time, the Union membership voted on a draft agreement between the Union and management. After the parties reached a tentative agreement, Jones posted a memorandum urging Union members to reject the contract. The AG's Office responded to the concerns raised by Jones by posting a rebuttal in which it explained its position. A few days later, Stagman authored an anonymous critique of the proposed agreement as well, which he posted on the Union bulletin board and distributed to Union members. Stagman believes his critique upset Ludwig, who allegedly told the AG's Office Chief of Staff Stephen Culliton that Stagman's analysis led to the defeat of the initial agreement. Ludwig admits that he believed Stagman had written the critical analysis. The AG's Office, however, did not respond to Stagman's analysis. Although Union members rejected this tentative agreement, they ultimately voted on and ratified a similar agreement in October. After the contract issue had been resolved, Stagman declared that he would run for president of the Union against Jones in the December election.

The third event of importance to this story occurred during the fall of 1995 as well. In the middle of October, Deputy Chief of Investigations Daniel Callahan opened an investigation examining Stagman's dealings with the Palos Heights Police Department. On behalf of one of his private clients, Stagman had called the Palos Heights Police Department to obtain a copy of a police report about an accident in which the private client had been involved. After being told no report existed, Stagman, at the very least, identified himself as being with the AG's Office and asked to speak with a higher ranking officer. Sergeant Charles Hankus returned Stagman's call. After their conversation, Stagman went to the Palos Heights Police Department and picked up a copy of the report. The Palos Heights Police Department, then, contacted Callahan asking about a "Sergeant Stagman" who had acted in an unprofessional manner. Callahan then informed Chief of Investigations Edward Bishop and Claps, who directed him to open the investigation.

In October, Callahan questioned Stagman about the incident. Stagman admitted to stating that he was with the AG's Office, but denied having described himself as a sergeant. Upon Callahan's request, Stagman submitted a written report of the incident in which he also named two witnesses to his telephone conversations with the Palos Heights Police Department. Callahan also obtained a report from Hankus about the incident. He did not conduct any other interviews or contact the witnesses noted in Stagman's report. Callahan summarized his findings in a report in which he concluded that Stagman was guilty of impersonating an officer.

Stagman claims that during this investigation Callahan kept Ludwig informed about his progress. According to Morgan, Ludwig at one point said "Now we've got him." Callahan, however, stated that he only talked to Claps, Bishop, Stagman, and members of the Palos Heights Police Department during the investigation.

In a November meeting, Callahan reported the findings from his investigation to Culliton, Claps, Bishop, Ludwig, and Labor Counsel James Carroll. During the meeting, these individuals expressed concerns about the potential criminal nature of Stagman's actions. Some individuals recommended that Stagman be dismissed if he had identified himself as a "sergeant." Stagman alleges that Ludwig told Morgan that before Stagman could be dismissed they had to check with Ryan. Callahan does not recall anyone at the meeting mentioning the need to report to Ryan. Ultimately, Culliton, who was unaware of Stagman's union-related activities, decided to dismiss Stagman. General Ryan did learn of the dismissal and informed Senator Carroll of it.

Ludwig sent a memorandum to Stagman on December 8, 1995, notifying him that his dismissal would be effective as of December 13, 1995. He stated six reasons for the termination of Stagman's employment: (1) interceding into a police matter for a private client; (2) using his employment with the AG's Office for the benefit of a private client; (3) invoking the name of the AG's office to benefit a private client; (4) representing himself as a "sergeant" to the Palos Heights Police Department; (5) filing a false report; and (6) failing to adhere to the AG's Office standards of professional conduct.

According to Morgan, however, Ludwig had been looking for reasons to fire Stagman for some time. Stagman had also recently been suspended for spending time away from his desk without permission. As part of the suspension, Stagman was told not to return to the building in which the AG's Office is located and where Union elections were to be held. Stagman contends that this incident, as well as others, demonstrates how Culliton and Ludwig orchestrated an attempt to build a case that they could use to dismiss Stagman.

Stagman's discharge came shortly before the Union elections in which Stagman's name was on the ballot as a candi-

date for president. As a result, Jones asked the other members of the Union board about whether Stagman's name should remain on the ballot. The Union board concluded it should not because Stagman was no longer eligible for the position since he no longer worked for the AG's Office. They agreed that if Stagman were reinstated, they would hold a new election for president at that time. During the same meeting, the Union board agreed to hold the elections in a different location because a space more convenient to the employees had become available.

Stagman disputes Jones's proffered reasons for the changes in the election. He claims Ludwig and Jones colluded to prevent him from running for president. He believes the Union board changed the location of the elections to make it easier for Stagman to be arrested if he attended. While Ludwig did tell Jones that Stagman would be arrested if he entered the building, both Ludwig and Jones deny any collusion with regard to these events. Ludwig explains the comments he made to Jones about arresting Stagman if he entered the building to attend the Union elections as merely informing Jones that Stagman was no longer permitted in the building because of the conduct that led to his dismissal.

Stagman challenged his dismissal in a variety of ways, including filing suit in federal district court. He raised several claims under 42 U.S.C. § 1983.[1] Only those claims related to the actions of Ryan, Claps, Ludwig, and Jones are before us. As to these defendants, Stagman asserts that they violated his First Amendment rights to free speech and assembly by preventing him from engaging in and dismissing him because of his union-related activities. The district court granted the defendants' motions for summary judg-

ment. It found that Ryan was not personally involved in the decision to dismiss Stagman and had no knowledge of Stagman's union-related activities. As to Claps, the district court concluded that he was not aware of Stagman's protected activities. Finally, while the district court found that Ludwig was personally involved in the investigation of Stagman and knew of his union-related activities, it concluded that Ludwig was not involved in the final decision to dismiss Stagman. Stagman appeals this decision.

## II. Analysis

Stagman's challenges to the district court's decision can be grouped into three categories. First, he attacks the district court's denial of his request to take Attorney General Ryan's deposition during the discovery phase of this case. Second, he contends the district court erred in refusing to consider portions of Morgan's affidavit. Finally, he contests the district court's grant of summary judgment with regard to each Ryan, Claps, Ludwig, and Jones.

### A. Attorney General Ryan's Deposition

■■■ We review district court decisions to limit discovery for abuse of discretion. See *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir.1996). While discovery is often broad, the Federal Rules of Civil Procedure authorize district courts to protect targets of discovery from "annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c). District courts may also direct that "the discovery may be had only by a method of discovery other than that selected by the party seeking discovery." Fed. R.Civ.P. 26(c)(3). In order to succeed with

---

1. Specifically, Stagman brought a § 1983 claim against the City of Palos Heights, Palos Heights Chief of Police Reed Powers, Sergeant Charles Hankus, Officer Glenn Sturtevant, and Officer John Doe, alleging they denied him his Fourteenth Amendment right to due process. The district court dismissed his

claims against these defendants. He also alleged that Ryan, Claps, Ludwig, and Jones violated his due process rights, but voluntarily dismissed these claims against Ryan, Claps, and Ludwig after the district court granted Jones's Rule 12(b)(6) motion on this issue.

his challenge, Stagman must demonstrate one or more of the following circumstances:

> (1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary.

*Gile*, 95 F.3d at 495. In addition, Stagman would have to establish that the district court's decision resulted in actual and substantial prejudice to him. *See id.*

■ Stagman appears to contend that the district court based its decision on clearly erroneous factual findings. He alleges that sufficient facts existed in the record to demonstrate the need for Attorney General Ryan's deposition. He asserts that Senator Carroll's and Morgan's affidavits establish that Ryan was the ultimate decision-maker with regard to his dismissal. Specifically, he references Carroll's statement that he "was approached by Attorney General James Ryan, at which time, Mr. Ryan advised the Affiant that he had been required to fire Mr. Stagman based on the information provided to him by his staff, or words to that effect." He also refers to Morgan's statements that because Stagman "was a close relative of an influential member of the General Assembly [Carroll], neither Mr. Ludwig, Mr. Stock [another AG's Office employee], nor Mr. Culliton would have fired him without James Ryan's express approval. Following standard practice, Mr. Ryan would have been advised both about the ostensible reasons for the termination and any risks involved in the decision … before providing approval." In addition, Morgan asserted that Culliton or another AG's Office employee "was going to advise the General about the recommendation to fire Stagman."

■ Stagman presented the district court only with Senator Carroll's affidavit when asking the court to require Ryan be deposed. Morgan's affidavit was not before the district court at the time Stagman asked to depose Ryan; Stagman filed it much later in response to the defendants' motions for summary judgment. We will not consider evidence that was not before the district court in making its decision, *see Smith v. Shawnee Library Sys.*, 60 F.3d 317, 324 n. 7 (7th Cir.1995), and, thus, do not consider Morgan's affidavit in our analysis here. The record contained statements of witnesses in which they indicated that Ryan was not personally involved in the decision to dismiss Stagman. The district court concluded that Carroll's affidavit did not contradict the assertion that Ryan was not personally involved in the evaluation and decision to fire Stagman, especially in light of the statements of other witnesses who stated that others, and not Ryan, had been the decisionmakers.

We agree with the district court's conclusion that nothing in Carroll's affidavit suggests a need to depose Ryan. While a generous reading of Senator Carroll's affidavit may create an inference that Attorney General Ryan, at most, approved or condoned the decision, it is clear that the decision was made by his staff. The statements of other witnesses in the record support the district court's conclusion that Ryan was not the ultimate decision-maker, and Senator Carroll's affidavit does not dispute this fact. Even if the district court had entertained Morgan's statements, they would not create a need to depose Ryan. The statements merely indicate that Morgan believed Ryan would be informed of any decision to dismiss Stagman and demonstrate Morgan's speculation as to the impact of the relationship between Carroll and Ryan on Stagman's situation. Stagman also presented no evidence that Ryan knew of his union-related activities when he asked to depose Ryan. We do not conclude that the district court abused its discretion when, considering the evidence before it at that time, it determined that deposing Ryan would serve no useful purpose. As we have noted, depositions of public officials create unique concerns. "They should not have to spend their time

giving depositions in cases arising out of the performance of their official duties unless there is some reason to believe that the deposition will produce or lead to admissible evidence." *Olivieri v. Rodriguez*, 122 F.3d 406, 409-10 (7th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1040, 140 L.Ed.2d 106 (1998). Deposing Ryan, in the view of the district court, would have served little purpose other than to disrupt "a busy official who should not be taken away from his work to spend hours or days answering lawyers' questions." *Id.* at 409. Therefore, the district court did not abuse its discretion in limiting Stagman's discovery by refusing to require the Attorney General of Illinois to be deposed.

### B. Morgan's Affidavit

Before considering the merits of Stagman's claims, we turn first to his assertions that the district court improperly excluded statements from Morgan's affidavit upon which he heavily relies to support his claims. Throughout his appeal, Stagman refers to statements in Morgan's affidavit to buttress his arguments. With regard to Morgan's statements, the district court concluded that his affidavit constituted "an amalgam of hearsay, speculation, and scant foundation for conclusory allegations—precisely the objections which would render the statements contained in this affidavit inadmissible at trial." After reviewing the district court's decision for abuse of discretion, *see United States v. Flores*, 5 F.3d 1070, 1080 (7th Cir.1993) (stating that we review district court evidentiary rulings for abuse of discretion), we conclude that the district court's decision is substantially correct.

In opposition to the defendants' motions for summary judgment, Stagman cannot rely upon statements in Morgan's affidavit that fail to meet the requirements set forth in Federal Rule of Civil Procedure 56(e). Specifically, Rule 56(e) states that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, statements outside the affiant's personal knowledge or statements that are the result of speculation or conjecture or merely conclusory do not meet this requirement. *See Box v. A & P Tea Co.*, 772 F.2d 1372, 1378 (7th Cir.1985).

Stagman seeds his arguments with a variety of statements from Morgan's affidavit. He references Morgan's statements to provide support for primarily three contentions:[2] (1) Ryan participated in the decision to dismiss Stagman; (2) Ludwig knew Stagman was on the bargaining team and was involved in the decision to discharge Stagman; and (3) Jones was a state actor because he colluded with Ludwig to discharge Stagman. All but one of the statements upon which Stagman relies to support these contentions, however, fail to meet the requirements of Rule 56(e).

Stagman turns to Morgan's affidavit for support of his contention that Ryan was involved with the decision to terminate him for allegedly impermissible reasons. He points to two of Morgan's statements in this regard. First, Morgan stated that Ludwig or Culliton would not have dismissed Stagman without Ryan's "express approval" because Stagman was a "close relative of an influential member of the General Assembly." Stagman contends that this statement should be admissible as opinion testimony by a lay witness. Under the Federal Rules of Evidence, a witness who is not an expert may testify about opinions or inferences formed that are based on the witness's perception and "helpful to a clear understanding of the witness' testimony or the determination of

---

2. Stagman also refers to several statements within Morgan's affidavit for which he offers no arguments as to why we should consider these statements when the district court found them inadmissible. We will not make these arguments for him and, thus, consider only the statements for which he presents legal arguments challenging the district court's conclusions.

a fact in issue." Fed.R.Evid. 701. As the advisory comments explain, the requirement that the opinion be based on the witness's perception is "the familiar requirement of first-hand knowledge or observation." Fed.R.Evid. 701(a) advisory committee's note. Specifically, Morgan's affidavit reads:

Because Sander Stagman was a close relative of an influential member of the General Assembly, neither Mr. Ludwig, Mr. Stock, nor Mr. Culliton would have fired him without James Ryan's express approval. Following standard practice, Mr. Ryan would have been advised both about the ostensible reasons for the termination and any risks involved in the decision, such as the pending Local Union election and Mr. Stagman's candidacy, before providing such approval.

Stagman has not demonstrated that Morgan had personal knowledge of the facts asserted in his statement. Thus, Morgan's statement does not meet the first requirement of Rule 701. It is mere speculation and, as such, a meaningless assertion. "[U]ltimately, the question of whether a lay opinion falls into the category of 'meaningless assertion' or whether that opinion actually will help the jury decide an issue in the case is a judgment call for the district court." *United States v. Allen*, 10 F.3d 405, 415 (7th Cir.1993). Thus, the district court did not abuse its discretion by refusing to consider these statements.

■ Second, Morgan stated that Ludwig told him that Ryan would be advised before Stagman was fired. Stagman contends that this statement constitutes a party admission under Rule 801(d)(2). Although Stagman does not specify under which subsection(s) of Rule 801(d)(2) this statement should be admitted, we believe only two possibilities exist. Under this rule, a "statement [that] is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity ... or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship ..." is admissible. Fed.

R.Evid. 801(d)(2)(A), (D). Stagman does not offer this statement against Ludwig, so we must determine whether it would be admissible against Ryan because Ludwig is a representative of Ryan. To establish that the statement comes within the scope of Rule 801(d)(2)(A), Stagman must present independent evidence that Ludwig was Ryan's representative. *Cf. United States v. Dalzotto*, 603 F.2d 642, 644 (7th Cir. 1979) (stating that in order to come within Rule 801(d)(2)(A) a statement made by a defendant to another person, who testified to it, constituted hearsay against the third party named in the statement unless independent evidence established the third party's involvement in the conspiracy as well). The problem is that while the record is clear that Ludwig is an employee of the AG's Office of which Ryan is the head, Stagman presents no evidence that Ryan designated Ludwig as his representative. Therefore, the statement is not admissible under this subsection.

■ Under Rule 801(d)(2)(D), however, we believe the statement would be admissible. In considering whether statements are admissible under this rule, we must determine if the employee was authorized by his employer regarding the matter about which he allegedly spoke. *See Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1565–66 (11th Cir.1991). First, Ludwig is employed by Ryan's office. Second, the statement concerns the dismissal of another employee of the AG's Office. Even if Ludwig was not the final decision-maker, Stagman's discharge was within the scope of Ludwig's employment as evidenced by the fact that he suggested disciplining Stagman for the Palos Heights incident and authored the memorandum notifying Stagman of the discharge. Finally, Ludwig made the statement while employed with the AG's office. We also note that the comments of Rule 801(d)(2) do not require first-hand knowledge for this exception to the hearsay rule. *See* Fed.R.Evid. 801(d)(2) advisory committee's note; *see also Williams v. Pharmacia,*

*Inc.*, 137 F.3d 944, 950 (7th Cir.1998). Thus, Ludwig's statement to Morgan that they must "advise" Ryan about the recommendation to fire Stagman would be admissible.

■ With regard to his claims against Ludwig, Stagman relies on Morgan's affidavit to support his contention that Ludwig knew of Stagman's participation on the bargaining team and Ludwig's involvement in the decision to discharge Stagman. These statements also fail to meet the requirements of Rule 56(e). Morgan states in his affidavit that "Mr. Ludwig learned that Sander Stagman was going to be a member of IFT Local 4747's collective bargaining team." Morgan, however, does not demonstrate personal knowledge of this information. It is mere speculation; no evidence describes how Morgan would have known about this fact. His affidavit also contains a statement that Ludwig considered Stagman to be "more aggressive and diligent" than Jones and, therefore, objected to his presence on the bargaining team. This statement also lacks the personal knowledge foundation and expresses conjecture as to Ludwig's feelings about Stagman's presence on the team.

■ Morgan also asserts in his affidavit that Ludwig told the AG's Office Bureau Chief in the Office of Administrative Services Norma Medina to discuss removing Stagman from the bargaining team with Jones and Union officials and that Medina told Morgan afterwards that the union had agreed to remove Stagman. This statement is based on inadmissible hearsay as well. Neither Morgan nor Stagman explains how Morgan knew that Ludwig had dispatched Medina for this "job." Thus, this aspect of the statement is mere conjecture. Even if we assume that Medina told Morgan this initial information as well, it constitutes hearsay within hearsay and is inadmissible unless each part of the statement falls within an exception to the general ban on admitting hearsay evidence. *See* Fed.R.Evid. 805. Contrary to Stagman's arguments, the statements would not be admissible under the party admissions exception to the hearsay rule under Fed.R.Evid. 801(d)(2)(D) and (E).

■ For Morgan's statement regarding Ludwig's involvement in Stagman's removal from the bargaining team to be admissible under Rule 801(d)(2)(D), he must demonstrate that the statement is being offered against Ludwig and that an agent or servant of Ludwig made the statement concerning a matter within the scope of and during the course of that relationship. *See Williams,* 137 F.3d at 950. Stagman does not present evidence demonstrating that removing Stagman from the bargaining team was within the scope of Medina's employment with the AG's Office. No evidence in the record indicates that the scope of Medina's job-related duties extended to the Union or the management's negotiation efforts with the Union. As we noted in *Williams,* "not everything that relates to one's job falls within the scope of one's agency or employment." *Id.* Persuading the Union which members to place on its bargaining team does not obviously fall within the job of the Bureau Chief in the Office of Administrative Services, Medina's position. The rules of evidence require Stagman to present factual support that Medina was an employee of Ludwig and that the statement concerned a matter within her employment. He, however, has pointed to no evidence to create this necessary foundation. Thus, we find no reason to disagree with the district court's assessment of this statement.

■ For Morgan's statement that Medina told him the Union removed Stagman from the bargaining team according to her request to be admissible as that of a coconspirator, Stagman would have to establish: (1) the existence of a conspiracy; (2) that the person making the statement was involved in the conspiracy; and (3) that the statement was made "during the course and furtherance of the conspiracy." *See, e.g., Garlington v. O'Leary,* 879 F.2d 277, 280 (7th Cir.1989). Stagman has not

presented evidence of the conspiracy or that any Union board member participated in it. Nor does he present evidence demonstrating that the statement was made in furtherance of the conspiracy. As Rule 801(d)(2) states: "The contents of the statement shall be considered but are not alone sufficient to establish ... the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E)." Because Stagman does not establish an adequate foundation for the admissibility of this statement, we cannot consider it. The same analysis applies to the unattributed statement that Ludwig dispatched Medina to discuss removing Stagman from the bargaining team with the Union. Stagman also does not establish the existence of a conspiracy with regard to this statement. Therefore, it too is inadmissible.

Finally, the district court also properly excluded from its consideration the statements that Stagman cites as evidence that Jones was a state actor because he colluded with Ludwig to remove Stagman from the bargaining team. To establish this collusion, Stagman relies on Morgan's statement that Ludwig dispatched Medina to persuade Union officials to remove Stagman from the bargaining team, as well as his comment that Medina told him the Union had agreed to the removal. As we have determined, it is clear that these statements constitute conjecture and hearsay and, therefore, were properly ignored by the district court.

Taken as a whole, Morgan's affidavit presents few facts that the district court could consider in light of Rule 56(e). Therefore, we find no reason to overturn the district court's evidentiary conclusions, with one exception, and consider these statements in our review of its grant of summary judgment.

### C. Summary Judgment

The district court granted summary judgment in favor of Ryan, Claps, Ludwig, and Jones with regard to Stagman's § 1983 claim. As to Ryan, Claps, and

Ludwig, the court found that Stagman had failed to present evidence establishing that they either were personally involved in the decision to discharge Stagman or had knowledge of Stagman's union activities. With respect to Jones, the district court also concluded that Stagman failed to establish a causal link between Stagman's union-related activities and Jones's alleged retaliation and, in the alternative, that Stagman had not established that Jones was a joint actor with the state actors. We agree with the district court's conclusions.

We review grants of summary judgment *de novo. See Tesch v. County of Green Lake,* 157 F.3d 465, 471 (7th Cir.1998). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, we construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, neither "the mere existence of some alleged factual dispute between the parties," *Anderson,* 477 U.S. at 247, 106 S.Ct. 2505, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), is sufficient to defeat such a motion.

Stagman claims that Ryan, Claps, Ludwig, and Jones impermissibly discharged him for exercising his First Amendment rights of free speech and assembly, alleging they are, thus, liable under § 1983. Under § 1983, government officials, while acting under the color of

state law, who deprive individuals of their constitutionally protected rights, are personally liable for damages. *See* 42 U.S.C. § 1983. Thus, to establish a claim under this statute, a plaintiff must demonstrate that defendants violated a constitutional right and that this violation occurred under the color of state law. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The Supreme Court clarified that plaintiffs alleging First Amendment retaliatory claims must show that the speech or conduct[3] engaged in was constitutionally protected and that this speech or conduct was the substantial or motivating factor in the employer's decision to terminate. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Conner v. Reinhard*, 847 F.2d 384, 393 (7th Cir.1988). If the plaintiff establishes these two points, the burden shifts to the defendant to establish that it would have dismissed the plaintiff even if the protected conduct had not occurred. *See Conner*, 847 F.2d at 393. "[A] plaintiff cannot prevail in her claim of retaliatory discharge if the defendant can show that the decision to terminate the plaintiff would have been reasonable even in the absence of the protected conduct." *Id.*

■ Defendants admit that Stagman engaged in constitutionally protected activities under the First Amendment when he participated in Union activities, such as critiquing the proposed bargaining agreement and running for office in the Union. We, like the district court, see no need to consider whether his activities actually constituted protected speech or conduct under *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and

merely assume they do for purposes of this appeal.[4]

■ Stagman, however, challenges the district court's determination that he has not established issues of material fact with regard to whether Defendants retaliated against him because of his speech and conduct. In order to establish that a defendant retaliated against a plaintiff because of a protected constitutional right, a plaintiff must demonstrate that the defendant knew of the retaliation and knew of the plaintiff's constitutional activities. *See Vance v. Peters*, 97 F.3d 987, 993 (7th Cir.1996), *cert. denied*, 520 U.S. 1230, 117 S.Ct. 1822, 137 L.Ed.2d 1030 (1997); *O'Connor v. Chicago Transit Auth.*, 985 F.2d 1362, 1369–70 (7th Cir.1993). Stagman contends that the record contains issues of material fact, so we turn to consider his arguments with regard to each Defendant.

### 1. Attorney General James Ryan

■ Stagman contends that the district court erred in granting summary judgment to Ryan based on its determination that Ryan did not terminate Stagman's position and had no knowledge of Stagman's union-related activities. To establish his claim against Ryan, Stagman must demonstrate that Ryan "kn[ew] about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye." *Vance*, 97 F.3d at 993 (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir.1995)) (internal citations omitted). In other words, Stagman must demonstrate a connection between his dismissal for retaliatory reasons and Ryan. In addition, Stagman must establish that Ryan knew of his union-related activities. "Allegedly protected speech cannot be proven to moti-

---

**3.** We evaluate free speech and free assembly claims under the same analysis. *See Gregorich v. Lund*, 54 F.3d 410, 414 n. 4 (7th Cir.1995).

**4.** While some union activities constitute protected speech and/or conduct, "[i]t does not follow ... that all activities of a union or its

members are constitutionally protected." *Hanover Twp. Fed. of Teachers Local 1954 (AFL–CIO) v. Hanover Comm. Sch. Corp.*, 457 F.2d 456, 460 (7th Cir.1972). Thus, we refrain from concluding definitively whether Stagman's specific union-related activities come within the protection of the U.S. Constitution for purposes of his § 1983 claims.

vate retaliation, if there is no evidence that the defendants knew of the protected speech." *O'Connor*, 985 F.2d at 1370. We agree with the district court that Stagman has not presented issues of material fact to establish a case against Ryan.

First, Stagman has not created an issue of material fact demonstrating a connection between the termination of his employment for retaliatory reasons and Attorney General Ryan. Stagman's reliance on Senator Carroll's statement does not reinforce his position. Arguing that the district court improperly ignored statements in Morgan's affidavit, Stagman bases his contentions upon statements from Morgan's and Senator Carroll's affidavits and a belief that the court should have made the "reasonable" inference that because Ryan involved himself in Stagman's vacation problems, he would also have participated in the decision to discharge Stagman. Because only one of the statements from Morgan's affidavit that Stagman uses to buttress his claims would be admissible, we consider only that statement along with the statement made by Senator Carroll.

A generous reading of Senator Carroll's affidavit supports Stagman's contention that Ryan approved Stagman's dismissal. Senator Carroll's affidavit states: "In January 1996, Affiant was approached by Attorney General James Ryan, at which time, Mr. Ryan advised the Affiant that he had been required to fire Mr. Stagman based on the information provided to him by his staff, or words to that effect." In his own affidavit, Ryan recalls the exchange, stating: "I had a conversation with Senator Howard W. Carroll early in 1996, after Sander Stagman was terminated. I mentioned that my staff informed me of Sander Stagman's termination due [to] his misconduct. However, at no time during this conversation did I tell Senator Carroll that I participated in the decision to terminate Sander Stagman." Ryan's affidavit also states that he was not involved in the investigation of Stagman, the review of documents relating to the discharge, or the decision to discharge Stagman. Morgan's affidavit statement that

Ludwig told him that before Stagman was discharged, Ryan would be advised also supports the allegation that Ryan would have been aware of the decision to discharge Stagman. The problem for Stagman, however, is not whether Ryan knew of or approved the decision to dismiss him, but rather whether he was part of the decision to dismiss Stagman for *retaliatory reasons*. Because neither Carroll's nor Morgan's affidavit supports this contention, we agree that the district court properly concluded that Stagman had not established the necessary link between Ryan and the alleged decision to terminate Stagman in retaliation for his union-related activities.

In addition, Stagman has not established that Ryan knew of Stagman's union-related activities. Ryan avers that he did not know that Stagman was part of the bargaining team, he authored a negative critique of the proposed bargaining agreement, or he was running for Union president. Stagman admits that he never told management that he was part of the team, and the May letter from Jones, which he copied to Ludwig, not Ryan, clearly indicates Stagman was not part of the team. While Stagman alleges Ludwig knew he had authored the critique, he does not claim Ryan did. He similarly fails to show Ryan knew he was running for president. Rather, Stagman asks this Court to infer that Ludwig, who supposedly talked with Morgan openly, would have shared this information with others, including Ryan, the Attorney General. This inference is beyond reason. We, thus, conclude that Stagman has not put forth any evidence demonstrating that Ryan knew of his union-related activities. Because Stagman has failed to establish a material issue of fact as to this point, as well as a connection between the alleged retaliatory conduct and Ryan, the district court correctly granted summary judgment to Ryan.

### 2. Joseph Claps

 Similarly, Stagman claims the district court erred in entering summary

judgment for Claps after it concluded that he, like Ryan, did not know of Stagman's expressive and associational conduct. Stagman offers two reason to support his contention that Claps knew of his union-related activities. First, he speculates that the timing of his discharge raises suspicion. He was discharged just days before the Union election. We have stated that "[s]uspicious timing does constitute circumstantial, or indirect, evidence to support a claim" in the context of discrimination suits. *Hunt–Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago,* 104 F.3d 1004, 1011 (7th Cir.1997). Stagman presents no evidence, other than his own assertion, to show any connection between the timing of his dismissal and his union-related activities. Speculation of suspicious timing alone is not enough to create a reasonable inference of knowledge. *See id.* Second, he alleges that because Claps's subordinates did not interview all potential witnesses with regard to the Palos Heights incident, we should infer some sort of knowledge of Stagman's union-related activities because the Palos Heights incident, supposedly, was manufactured as a reason for his dismissal. This assertion is absurd in light of the fact that Stagman admitted to using his position as an employee of the AG's Office to help a private client. He also fails to assert that Claps told the subordinate how to conduct the investigation; no evidence indicates that such direction ever occurred. The evidence in the record about Claps indicates that he did not know of Stagman's union-related activities. While Claps does rely upon his affidavit, Stagman fails to present any evidence, other than mere speculation and conjecture, to discredit Claps's averments. Thus, Stagman does not meet his burden of showing that Claps knew of his protected activities. If he did not know about them, it is impossible to conclude that Claps's decision to fire him was motivated by an illegitimate desire to prohibit Stagman from exercising them. Therefore, we believe the district court correctly granted summary judgment to Claps.

### 3. Edward Ludwig

Stagman also takes issue with the district court's grant of summary judgment to Ludwig after it determined that he was not responsible for the decision to terminate Stagman's employment with the AG's Office. As with the other defendants, Stagman must demonstrate that Ludwig knew Stagman engaged in expression and/or conduct that was constitutionally protected in the circumstances and retaliated against him because of those activities. *See Caldwell v. City of Elwood,* 959 F.2d 670, 672 (7th Cir.1992). If he establishes this connection, he must demonstrate that his expression or conduct was the "substantial or motivating factor in the decision to terminate" him. *Conner,* 847 F.2d at 393. As we have noted in similar cases, "a plaintiff may not sustain her burden 'simply by showing that the elimination of the protected activity may have been welcomed by the defendants,' nor can we typically draw strong conclusions from the mere fact that protected speech may have preceded an adverse employment decision." *Wright v. Illinois Dept. of Children & Family Servs.,* 40 F.3d 1492, 1500 (7th Cir.1994) (citations omitted). Stagman simply fails to meet his burden.

Stagman attacks the district court's opinion in three ways. First, he asserts that the district court ignored that Ludwig's retaliatory actions consisted of three things—(1) seeking to dismiss him from the bargaining team; (2) suspending him for leaving his workstation without permission; and (3) ultimately, dismissing him. Second, he claims that evidence in the record establishes that Ludwig actively participated in the decision to dismiss him for retaliatory reasons by participating in a series of meetings on the subject during which Ludwig searched for a way to dismiss him. Finally, Stagman claims that the district court acted as a super-personnel department and concluded, contrary to the conclusions reached by the actual decision-makers, that Stagman's use of the

AG's Office's clout to benefit a private client showed that his protected expression or conduct was not the substantial or motivating factor in his dismissal.

Stagman's contention that Ludwig engaged in a series of retaliatory events against him does not win our support. His claim that Ludwig's retaliatory animus toward him led to his dismissal from the bargaining team is based solely on speculation. To establish this claim, he relies on statements in Morgan's affidavit that Ludwig dispatched Medina to get Stagman off the bargaining team. We, like the district court, find that the record does not demonstrate Morgan had personal knowledge of these events, nor does it contain anything that would elevate these statements above speculation or conjecture. Other evidence in the record indicates that at the earliest, Ludwig would have learned of Stagman's status with regard to the bargaining team in May in a letter that expressly stated Stagman was not a member. Stagman also presents no admissible evidence of any collusive action between Ludwig and Jones suggesting they conspired to keep him off the team. Nor is there any evidence to indicate that Ludwig knew of Stagman's alleged position on this team. Thus, Stagman does not establish that Ludwig knew of Stagman's potentially protected activity, making it difficult for him to have retaliated against Stagman by prohibiting him from engaging in it.

Similarly, Stagman seeks to bolster his claim that his suspension was timed to prevent him from attending the Union elections with Morgan's affidavit. While the timing issue is one we consider, on its own, it constitutes nothing more than mere speculation. No evidence in the record, outside of Morgan's affidavit, which we and the district court found insufficient, creates a material issue of fact. Stagman, thus, did not establish that the suspension was a retaliatory action aimed at preventing him from participating in the Union elections.

Stagman's claim that his dismissal constitutes a retaliatory action overlaps with his assertion that Ludwig participated in the decision, so we consider them together. While it is true that the record demonstrates the existence of an issue of fact as to the number of meetings that occurred with regard to the AG's Office investigation of Stagman for the Palos Heights incident, the record clearly establishes that Culliton made the final decision. Although he may have based it upon the reports and recommendations of others, the final decision cannot be attributed to these individuals or Ludwig specifically. In fact, both parties agree that Ludwig had recommended suspension, not dismissal, for Stagman's activities. The evidence upon which Stagman relies again comes from statements in Morgan's affidavits we cannot consider because they constitute unsupported speculation. Thus, Stagman fails to present evidence of an issue of material fact as to whether Ludwig was personally responsible for the decision to dismiss him for retaliatory reasons.

We will go one step further and agree with the district court that even if Stagman had established that Ludwig was personally involved in the final decision to terminate Stagman's employment, his claim still would fail to survive Ludwig's motion for summary judgment. The letter notifying Ludwig of his dismissal stated that he was discharged for his actions in connection with the Palos Heights Police Department. Courts do not sit as "super-personnel department[s]," *see Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986). Our role is not to second-guess the employer's decision, but to determine whether the employer's substantial or motivating factor in terminating employment was the plaintiff's protected conduct. The record clearly supports the district court's conclusion that the decision to terminate Stagman was based on his conduct as it related to his use of the AG's Office's clout, not as it related to his union activities. While Ludwig and others may have suggested lesser punishment for Stagman, the record establishes that all agreed Stagman had committed a serious offense. The rec-

ord indicates that Culliton was the undisputed ultimate decision-maker and based his decision solely on Stagman's use of the AG's Office to benefit a private client, not on his union-related activities of which Culliton knew nothing. Thus, we do not find the district court's conclusion that Stagman would have been fired regardless of his protected conduct or the attitude of his supervisors toward his activities inappropriate. Stagman simply fails to present evidence that "but for" his protected activities he would not have been discharged. Therefore, we find the district court did not err in entering summary judgment for Ludwig.

### 4. Richard Jones

In Stagman's final challenge to the district court's decision, he contends the district court erred in concluding that Stagman had not established that Jones acted with Ludwig so as to make him a state actor and, therefore, liable under § 1983. We agree with the district court's conclusion that Stagman did not present evidence demonstrating Jones acted under the color of state law for § 1983 purposes.

In order to establish a § 1983 claim against Jones, Stagman must show that in addition to the fact that his constitutional right was violated, the violation occurred *under state law*. *See Adickes*, 398 U.S. at 150, 90 S.Ct. 1598; *see also Moore v. Marketplace Restaurant*, 754 F.2d 1336, 1352 (7th Cir.1985). The Supreme Court has explained:

> [T]o act "under the color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting ... "under color" of law for purposes of § 1983 actions.

*Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *see also Leahy v. Board of Trustees of Community College Dist. No. 508*, 912 F.2d 917, 921 (7th Cir.1990). We have held that to establish joint action, a plaintiff must demonstrate that the public and private actors shared a common, unconstitutional goal. *See Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir.1991). In other words, a plaintiff must establish that a conspiracy, or an understanding, to violate the plaintiff's constitutional rights existed between the public and private actors. *See Moore*, 754 F.2d at 1352.

Although Stagman provides few specifics in his brief, it appears from the record that he relies upon statements in his own affidavit and in Morgan's affidavit as evidence of the existence of an agreement between Jones and Ludwig. He points to statements in his affidavit in which he states that another Union board member told him the real reason for his removal from the bargaining team was because Ludwig wanted him off of it. As we have concluded, this statement is based on hearsay and does not come within the party admission exception. As such, we cannot consider it when determining whether he established joint action between Jones and Ludwig. Stagman also cites to Morgan's affidavit to establish the link between Jones and Ludwig. Because these statements also constitute inadmissible hearsay, we refrain from introducing them into our analysis.

No other evidence exists in the record demonstrating a connection between Jones and Ludwig. The record does contain, however, statements from both Jones and Ludwig denying any such agreement existed. Without other evidence, Stagman's conclusory allegations are insufficient to create a material issue of fact. "[A] bare allegation of a conspiracy between private and state entities is insufficient to bring the private entity within the scope of § 1983." *Messman v. Helmke*, 133 F.3d 1042, 1045 (7th Cir.1998). Thus, we find no reason to reach a conclusion differing from that of the district court.

In sum, Stagman's challenge to the district court's grant of summary judgment to Ryan, Claps, Ludwig, and Jones fails because it does not present evidence establishing the defendants knew of his protected activities, were the decisionmakers in his dismissal, or acted in concert with the state actors to violate his constitutional rights.

### III. Conclusion

Stagman's arguments challenging the district court's conclusions do not persuade us to alter its decision. First, the district court did not abuse its discretion in concluding that Stagman had not established a need to depose Ryan. Second, the district court's evidentiary rulings regarding Morgan's affidavit also do not demonstrate an abuse of discretion. Finally, based on the record, Stagman failed to present issues of material fact that would make the district court's grant of summary judgment inappropriate. We, like the district court, conclude that summary judgment in favor of the defendants is appropriate. Thus, we AFFIRM the decision.