**Carole SPENCER, Plaintiff–Appellant,**

v.

**ILLINOIS COMMUNITY ACTION ASSOCIATION, an Illinois not-for-profit corporation, Grey Warrner, Thornton Ridinger, et al., Defendants–Appellees.**

No. 99–3125.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 17, 2002.

Decided Oct. 24, 2002.

Before COFFEY, EVANS, and WILLIAMS, Circuit Judges.

## ORDER

Plaintiff–Appellant Carole Spencer ("Spencer") brought a § 1983 action against the defendants in 1999, alleging that she had been terminated from her position with the Illinois Community Action Association (the "Association") in retaliation for exercising her First Amendment rights. The district court granted the defendants' motion for summary judgment, and Spencer appeals. We affirm.

## I. FACTUAL BACKGROUND

The United States Department of Health and Human Services ("HHS") distributes federal funds to the Illinois Department of Commerce and Community Affairs ("IDCCA"), which forwards these monies on to the Association, a network of forty-two community action agencies throughout the state of Illinois, all of which are to assist low-income individuals. The Association, in turn, disburses these dollars to its various member community action agencies in the form of block grants.

Spencer was hired as the Executive Director of the Association in April 1991. At some point during her employment, Spencer somehow concluded that the Association was violating federal law in the way it was administering certain unused funds. In 1996, Spencer wrote a letter to HHS expressing her concerns, and subsequently shared these concerns with Norm Sims ("Sims"), who had recently been appointed as the interim director of the IDCCA. At least two other IDCCA officials were vexed by Spencer's actions, and communicated their displeasure to the Association's president. After warning Spencer to guard any public comments she might make on the Association's behalf—in a 7/24/97 memorandum from the Associa-tion's President issued to Spencer directing her "to maintain an 'our' approach rather than a 'my' approach when referring the [Association] in public" (Def.Ex. 31)—the Association's Board of Directors eventually decided to terminate her and did so at a meeting on January 8, 1998.

On June 4, 1999, Spencer brought an action under 42 U.S.C. § 1983 in federal court against the Association, the members of the Association's Board of Directors, and two officials of the Illinois Department of Commerce and Community Affairs, stating that she had been terminated in retaliation for her exercise of rights protected under the First Amendment. The defendants moved for summary judgment, arguing that as Spencer failed to demonstrate that she had been fired "under color of state law"—as is required for a § 1983 claim—because she failed to show that the Board of Directors had conspired with state officials to terminate her employment. The district court granted the defendants' motion for summary judgment. *See Spencer v. Illinois Cmty. Action Ass'n*, 164 F.Supp.2d 1056, 1064 (C.D.Ill. 2001).

## II. DISCUSSION

### A. Standard of Review

A summary judgment motion should be granted if there is "no genuine issue as to any material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We review a grant of summary judgment *de novo*, viewing all the facts and drawing all

reasonable inferences therefrom in favor of the nonmoving party. *See Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir.2002).

## B. Color of Law

To establish liability under 42 U.S.C. § 1983, plaintiffs must prove that the conduct complained of (1) was committed by a person acting under "color of state law" and (2) violated a constitutional right of the plaintiff. *See Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir.1994) (quotation omitted). A State can generally be held responsible for a private decision only when a state actor has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Rendell–Baker v. Kohn*, 457 U.S. 830, 840, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (quotation omitted). We have held that to implicate a private actor under § 1983, a plaintiff must demonstrate that (1) a state official and at least one private individual "shared a common, unconstitutional goal" in that a conspiracy or an understanding existed between the public and private actors to violate the plaintiff's constitutional rights, *Stagman v. Ryan*, 176 F.3d 986, 1003 (7th Cir.1999), and (2) the private individual(s) were "willful participants in joint activity with the State or its agents." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir.1998) (quotation omitted).

Spencer admits that the Association and the members of its Board of Directors are private actors (App. Br. at 24.). Thus, to survive summary judgment, Spencer was required to proffer something more than conclusory allegations regarding the existence of a "common, unconstitutional goal," *Stagman*, 176 F.3d at 1003, or a conspiracy or an understanding between the Association and the IDCCA. *See id.*

In previous cases in this Circuit, we have found state action despite the presence of a private party in four types of situations: (1) when a "symbiotic relationship" exists between the state and the private actor; (2) when a "nexus" exists between the private act and the state action; (3) when a private party carries out a traditionally public function; and (4) when the involvement of governmental authority aggravates or contributes to the unlawful conduct. *See Air Line Pilots Ass'n, Int'l v. Department of Aviation of the City of Chicago*, 45 F.3d 1144, 1149 (7th Cir.1995) (internal citations omitted).

■ Here, it is clear from the undisputed facts in the record that Spencer has failed to offer any evidence tending to demonstrate that the Association and the IDCCA had an understanding—much less had engaged in a conspiracy—to violate her constitutional rights. Each of the defendants testified that no conspiracy or understanding existed to fire Spencer. Her unsubstantiated theory is based on circumstantial evidence—*i.e.*, that there was an alleged threat by the IDCCA to withhold funding from the Association until Spencer was terminated. Spencer did concede, that Sims, the IDCCA interim director, enjoyed ultimate authority for the disbursement of funds and agreed that Sims played no role in Spencer's termination. (Appellant's Br. at 32–33.) As Spencer has failed to allege that Sims was part of the alleged conspiracy or understanding, her claim must fail.

## C. Protected Speech

To prevail on a § 1983 claim involving a termination of employment, a plaintiff must establish that his or her protected conduct was the substantial or motivating factor in the employer's decision to discharge her; *i.e.*, that the plaintiff would not have been terminated "but for" the protected conduct. *See Thomsen v. Romeis*, 198 F.3d 1022, 1027–28 (7th Cir.

2000) (holding that a "plaintiff may not prevail on a retaliatory discharge claim if the decision to terminate would have been reasonable even in the absence of the protected conduct").

■ Even assuming, *arguendo*, that the defendants in this case conspired or came to an understanding to take an illegal action, Spencer has failed to establish that her speech was protected. In her deposition, Spencer admitted to speaking not as a private citizen on a matter of public concern, but as a representative (albeit unauthorized) of the Association and on its behalf (despite their lack of knowledge or consent). We have previously held in a similar context that a plaintiff's speech was not protected when the speech was made on behalf of an employer, and not made as a private citizen. *See Youker v. Schoenenberger*, 22 F.3d 163, 166 (7th Cir.1994).

In *Youker*, a deputy tax assessor sued a town and its tax assessor under § 1983 for denial of his First Amendment rights and for retaliatory discharge. The deputy-plaintiff in that case alleged he had been fired not because of his many confrontations with co-workers (as the defense had maintained), but because he had alerted authorities to alleged fraudulent homestead exemption claims. *See id.* at 165. In affirming the district court's grant of summary judgment in favor of the defendants, we held that as the deputy-plaintiff was clearly speaking as an employee when notifying others of the alleged acts of fraud, his speech was not protected and thus we did not need to determine whether the government's interest in promoting the efficiency of the public services it performed outweighed the employee's interest in speaking on a matter of public concern. *See id.* at 166–67. Similarly, in this case, Spencer admitted that she spoke as an

employee when alerting others to the Association's allegedly illegal acts. Thus, as a matter of law, she failed to demonstrate that her speech was protected.

## III. CONCLUSION

As Spencer has failed to establish the existence of a genuine issue of material fact as to whether she was fired "under color of state law," *see supra* at Part II.B (no proof of a "common, unconstitutional goal") and as she has failed to establish that her speech was protected under the First Amendment, we AFFIRM the district court's grant of summary judgment.