NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 26, 2017[*]
Decided May 26, 2017

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 17-1316

| | |
|---|---|
| TINGIA WHEELER, | Appeal from the United States |
| *Plaintiff-Appellant*, | District Court for the Eastern District of Wisconsin. |
| *v.* | |
| | No. 15-C-95 |
| CYNTHIA RADTKE, | |
| *Defendant-Appellee*. | Lynn Adelman, *Judge*. |

**O R D E R**

Tingia Wheeler, a Wisconsin inmate, brought this suit under 42 U.S.C. § 1983 against Cynthia Radtke, a prison officer, after she issued him a conduct report that he regarded as punishment for inmate complaints he filed that alleged staff misconduct. The district court granted summary judgment for Radtke, finding it undisputed that she didn't know that Wheeler had filed the inmate complaints. Because Wheeler did not

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

establish that his submission of inmate complaints motivated Radtke to write the conduct report, we uphold the grant of summary judgment.

Radtke charged Wheeler in early 2013 with violating prison rules against gang activity after three confidential informants identified him as an active leader of the Gangster Disciples. Wheeler said he was framed and, in an effort to clear his name, began writing letters to family members and inmates suggesting ways to identify the confidential informants. Once he thought he knew the informants' identities, he urged his contacts to expose the informants as "snitches" and pressure them into recanting. He suggested, for example, contacting the informants' families, using social media to publicly shame them, and—if they were out on parole—harassing them at work and fingering them for taking part in fake robberies. In an effort to publicize the identity of one suspected informant named "Will", Wheeler wrote to a local radio station requesting that it give a "shout-out" to Will and play a certain song with lyrics suggesting that Will was an informant. Wheeler even asked the radio station to announce what he thought, mistakenly, to be Will's address.

At that point Radtke, believing that Wheeler's actions endangered both the public and his suspected informants, intervened. She and another officer met with Wheeler, notified him that they had been monitoring his letters, and told him to stop trying to expose the confidential informants. Two days later Wheeler submitted inmate complaints about Radtke's behavior at the meeting. According to Wheeler, Radtke showed him the letters, told him that he was mistaken about the informants' identities, and said that she was going to "write [him] up for everything under the sun." The prison's security director reviewed Wheeler's complaints but returned them because they were insufficiently specific. Wheeler's complaints eventually were dismissed.

Two weeks after Wheeler submitted the complaints, Radtke wrote a conduct report charging Wheeler with several violations related to his letters. In the conduct report she described Wheeler's letters and his "intensive efforts" to reveal the identities of the confidential informants, publicize them as snitches, and induce them to recant. She believed that his actions posed the risk of "physical and violent retaliation" against suspected inmates as well as "serious violence and injury" to others. Wheeler responded that Radtke had read his letters out of context and that he had not made any threats. After a disciplinary hearing, Wheeler was found guilty of making threats and received 180 days of disciplinary segregation.

Wheeler sued Radtke for writing the conduct report in retaliation for his complaints about her, in violation of the First Amendment. According to a declaration that Wheeler later submitted, Radtke admitted during their meeting that the confidential informants had lied, and she threatened to report Wheeler if he filed an inmate complaint. Radtke carried out that threat in response, Wheeler asserted, repeating the statement of a guard that Wheeler would not have received a conduct report had he not filed the complaints against her. Another inmate attested to overhearing this conversation with the guard.

As discovery proceeded, Wheeler asked for the names of the confidential informants. Radtke opposed this request on security and relevancy grounds, and the district court agreed with her and denied Wheeler's request. Rebuffed in his efforts to obtain this information, Wheeler asked the court three times to recruit counsel, adding that he suffered from an unspecified "debilitating mental state" resulting from his time in solitary confinement. The court denied Wheeler's first two requests on grounds that he had not attempted to find counsel himself, and the third request on grounds that Wheeler was capable of litigating the case, which was not complex and involved only one defendant.

The district court ultimately granted summary judgment for Radtke. Wheeler, the court explained, had no admissible evidence that Radtke knew of his complaints before she wrote the conduct report, and therefore failed to establish a necessary element of his claim—i.e., that his protected speech was at least a motivating factor in Radtke's decision to write the conduct report.

On appeal Wheeler generally challenges the summary-judgment ruling and maintains that Radtke "very well knew of not just my complaint, but every move I made." Wheeler, however, does not support this assertion with any admissible evidence. It was his burden to present sufficient evidence that Radtke knew of the complaints that, he believes, prompted her to write the conduct report. *See Wackett v. City of Beaver Dam*, 642 F.3d 578, 582 (7th Cir. 2011); *Stagman v. Ryan*, 176 F.3d 986, 1001 (7th Cir. 1999). But as the district court pointed out, Wheeler offered only hearsay evidence—his declaration and an affidavit from another inmate—repeating a guard's statement. Inadmissible hearsay evidence may not be considered on summary judgment. *See Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

Wheeler also argues that the district court abused its discretion when it declined to recruit counsel, ignoring his mental-health infirmities and the limitations he faced

accessing confidential information during discovery. But the district court applied the correct legal standard, properly considering both the complexity of the case and Wheeler's ability to litigate it himself. *See Olson v. Morgan*, 750 F.3d 708, 711–12 (7th Cir. 2014); *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc). His filings demonstrate that he understood the relevant legal issues and was capable of presenting this straightforward case.

We have considered Wheeler's remaining contentions, and none has merit.

AFFIRMED.